# EXHIBIT A

| | |
|---|---|
| **District Court, Larimer County, Colorado**<br>201 La Porte Ave<br>Fort Collins, CO 80521 | DATE FILED: August 7, 2019 11:41 AM<br>FILING ID: 1B2D0B2BE6D0F<br>CASE NUMBER: 2019CV30708 |
| **Plaintiff:**  TITAN FEEDING, LLC<br><br>**v.**<br><br>**Defendants:** COREY CATTLE COMPANY, LLC; MICHAEL COREY a/k/a MIKE COREY; and DOES 1-10. | ▲**COURT USE ONLY**▲ |
| **Attorneys for Plaintiff Titan Feeding, LLC:**<br>John O'Brien (#15183)<br>Scott C. Sandberg (#33566)<br>Spencer Fane LLP<br>1700 Lincoln Street, Suite 2000<br>Denver, Colorado 80203<br>Telephone:  (303) 839-3800 / Fax:  (303) 839-3838<br>Email: jobrien@spencerfane.com; ssandberg@spencerfane.com | Case No.:<br><br>Div: |
| **COMPLAINT AND JURY DEMAND** | |

Titan Feeding LLC (**"Titan"**) for its Complaint against Defendant Corey Cattle Company, LLC (**"Corey Cattle"**), and Michael Corey states and alleges as follows:

## SUMMARY

1.      Defendants own and operate a cattle feed yard that takes in and feeds cattle owned by its customers.

2.      Titan was one such customer of the Defendants. The Defendants accepted thousands of Titan's cattle for feed and care on a custom basis.

3.      In summer 2019 Titan discovered that several hundred head of Titan's cattle were gone from Defendants' feed yard.

4.      Defendants acknowledged that the cattle were gone and confessed to having severe financial problems.

5.      Defendants stole Titan's cattle and breached contractual obligations to Titan. On information and belief, Defendants have also stolen cattle owned by the Defendants' other customers.

6.     On June 29, 2019, and once Titan discovered that the Defendants had stolen Titan's cattle, Titan sent 21 trucks to the Defendants' feedlots to pick up Titan's remaining cattle. On June 29, 2019, Titan recovered approximately 958 of its cattle (the **"Recovered Cattle"**). But, as described herein, the Defendants had stolen not less than 858 head of Titan's cattle which could not be found or recovered.

7.     The Recovered Cattle were moved in mid feeding cycle which caused loss of value and performance.  In addition, Defendant Corey Cattle is in financial difficulty and cannot perform on its obligation to repurchase the Recovered Cattle when fat, leading to additional losses by Titan on the Recovered Cattle.

## PARTIES, JURISDICTION, AND VENUE

8.     Titan is a Colorado limited liability corporation which does business at 123 N. College Avenue, Suite 350, Fort Collins, Colorado 80524.

9.     Corey Cattle is a Utah limited liability.

10.     Michael Corey, also known as Mike Corey, is a Utah resident and an owner of Corey Cattle.  Michael Corey signed contracts on behalf of Corey Cattle, directed Corey Cattle to make false representations, and was the ringleader of the scheme described in this Complaint.

11.     Does 1-10 are individuals and entities working in concert with Defendants to undertake the tortious and illegal conduct alleged in this Complaint and who are liable for that tortious conduct.  Defendants have concealed the identity of Does 1-10, who will be identified in amended pleadings following discovery.  The fraudulent scheme described below was so large, widespread and thoughtfully concealed that it is unlikely to have been accomplished by just the two currently named Defendants.  Corey Cattle is a large business organization with dozens of employees, including onsite accounting, bookkeeping and office staff, all of whom had roles in handling tens of millions of dollars during the time frame of the events described below.  The two currently named Defendants had to have help effectuating and concealing the scheme.  Plaintiff anticipates identifying wrongdoers who aided and abetted in the scheme and adding defendants as the details of the scheme become known.

12.     This Court has personal jurisdiction over Defendants under C.R.S. § 13-1-124 and U.S. Const. Amend. 14 based on the following:

     a.     Titan incorporates each allegation and Exhibit in this Complaint as jurisdictional facts.

     b.     Defendants transacted business in Colorado and committed tortious acts in Colorado.

     c.     Defendants executed numerous contracts, including those at issue in this case, in which Defendants agreed, directly above Michael Corey's

signature, that: "This Agreement shall be governed in accordance with the laws of the State of Colorado, and any dispute under this Agreement shall be heard by courts of competent jurisdiction located in the State of Colorado." <u>See, e.g.</u>, <u>Exhibits 1-4</u> ¶ 28.

d.    Defendants executed numerous contracts, including those at issue in this case, in which Defendants agreed to provide all notices to Titan in Fort Collins, Colorado.  <u>See, e.g.</u>, <u>Exhibits 1-4</u> at ¶ 22.

e.    Defendants sent numerous feed bills, including the fraudulent feed bills at issue in this case, to Titan in Fort Collins, Colorado.

f.    The injuries triggering this case arise out of and are related to significant activities directed by Defendants toward Colorado.  Defendants purposefully availed themselves of the privilege of conducting business in Colorado and this litigation arises out of Defendants' forum-related contacts.

g.    Defendants routinely conduct business with Colorado residents and are not burdened by being subjected to jurisdiction in Colorado.

h.    In light of the egregious theft and unlawful conduct Defendants directed to this State, Colorado has a strong interest in resolving this controversy, and Titan has a strong interest in attaining effective and convenient relief in this Court.

13.    Venue is proper in this Court under C.R.C.P. 98(c)(2) and (5) because the contracts at issue were to be performed in Fort Collins, Colorado, and because Defendants committed torts in Fort Collins, Colorado.

## GENERAL ALLEGATIONS

14.    Starting in 2017 Titan and Defendants entered into dealings in which

a.    Corey Cattle, through Michael Corey, sold cattle to Titan, after which Titan owned the cattle;

b.    After selling the cattle to Titan, Defendants fed and cared for Titan's cattle and sent Titan bills for these services (**"Feed Bills"**);

c.    Defendants agreed to keep and maintain accurate records of Titan's cattle in Defendants' custody; and

d.    When Titan's cattle reached designated weight, Corey Cattle, through Michael Corey, agreed to repurchase the cattle.

3

15.     While it held custody of Titan's cattle Defendants stole the cattle, sold the cattle, and pocketed the money.

16.     Then Defendants falsely represented to Titan that the cattle were still in Defendants' custody.  Defendants made these representations through Feed Bills, reports, and verbal representations.

17.     Defendants used fraud to prevent Titan from detecting Defendants' theft. Defendants sent falsified Feed Bills to Titan, falsely charging Titan for feed and care for Titan's cattle after Defendants had stolen Titan's cattle and removed the cattle from Defendants' premises.

18.     Defendants falsified records relating to cattle owned by Titan and provided the false records to Titan.

19.     On or about July 19, 2017, Titan and Corey Cattle entered an Agreement to Purchase, Feed and Re-Sell Cross Wagyu Cattle (**"Contract #2"**), a copy of which is attached as Exhibit 1 and incorporated into this Complaint.  Pursuant to Contract #2, Titan purchased 564 head of cattle on or about July 19, 2017.  While Titan owned the 564 head, Defendants stole not less than 20 head, valued at not less than $49,241.14, from Titan and either sold the 20 head or otherwise transferred or disposed of them without Titan's authorization.

20.     On or about August 23, 2017, Titan and Corey Cattle entered an Agreement to Purchase, Feed and Re-Sell Cross Wagyu Cattle (**"Contract #3"**), a copy of which is attached as Exhibit 2 and incorporated into this Complaint.  Pursuant to Contract #3, Titan purchased 479 head of cattle on or about August 23, 2017.  While Titan owned the 479 head, Defendants stole not less than 369 head, valued at not less than $844,663.62, from Titan and either sold the 369 head or otherwise transferred or disposed of them without Titan's authorization.

21.     On or about December 7, 2017, Titan and Corey Cattle entered an Agreement to Purchase, Feed and Re-Sell Cross Wagyu Cattle (**"Contract #5"**), a copy of which is attached as Exhibit 3 and incorporated into this Complaint.  Pursuant to Contract #5, Titan purchased 490 head of cattle on or about December 7, 2017.  While Titan owned the 490 head, Defendants stole not less than 302 head, valued at not less than $670,249.63, from Titan and either sold the 302 head or otherwise transferred or disposed of them without Titan's authorization.

22.     On or about December 22, 2017, Titan and Corey Cattle entered an Agreement to Purchase, Feed and Re-Sell Cross Wagyu Cattle (**"Contract #6"**), a copy of which is attached as Exhibit 4 and incorporated into this Complaint.  Pursuant to Contract #6, Titan purchased 755 head of cattle on or about December 22, 2017.  While Titan owned the 755 head, Defendants stole not less than 167 head, valued at not less than $347,081.23, from Titan and either sold the 167 head or otherwise transferred or disposed of them without Titan's authorization.

23.     Defendants falsified records of cattle owned by Titan and failed to keep complete or accurate records of cattle owned by Titan.  The above-stated number, allocation, and value of

DN 3724601.1

head stolen by Defendants are based on information available to Titan but Defendants may have stolen additional head related to other contracts or differently-allocated head.

24.     Records available to Titan at this time show that Defendants stole not less than 858 head of cattle valued collectively at not less than $1,911,235.62 (collectively, the **"Stolen Cattle"**).

25.     To conceal their theft of the Stolen Cattle, Defendants falsified Feed Bills and related records pertaining to the Stolen Cattle to create the false appearance that Defendants were feeding and caring for the Stolen Cattle when in fact the Stolen Cattle had been sold, transferred, or otherwise disposed of.  Defendants sent falsified Feed Bills and other records to Titan in Fort Collins, Colorado.

26.     An example of a falsified feed bill is attached as <u>Exhibit 5</u> in which Defendants falsely stated that they had fed the Stolen Cattle $112,545.12 in feed during the month of April, 2019 which was not in fact fed to the Stolen Cattle. In fact, and unknown to Titan, at least 858 of Titan's cattle were missing in April, 2019, and the April Feed Bill gave the illusion that Titan's cattle were all still there when in fact at least 858 had been stolen.

27.     Defendants collected money from Titan for feed and care which they never provided, because Defendants had previously stolen and ran off with the cattle for which Titan was billed.

28.     Defendants assumed duties to Titan independent of their contractual duties including, without limitation, bailment duties and duties to truthfully account for cattle.

## FIRST CLAIM FOR RELIEF
### (Civil Theft Under C.R.S. § 18-4-405 Against All Defendants)

29.     Titan incorporates the paragraphs above as if set forth fully in this paragraph.

30.     At all relevant times Titan had and continues to have a possessory or proprietary interest in the Stolen Cattle.

31.     Defendants knowingly obtained, retained, or exercised control over the Stolen Cattle without Titan's authorization and by Defendants' deception and Defendants:

    a.     Intended to permanently deprive Titan of the use or benefit of the Stolen Cattle;

    b.     Knowingly used, concealed, or abandoned the Stolen Cattle in such manner as to permanently deprive Titan of the use or benefit of the Stolen Cattle; and

DN 3724601.1

c.     Used, concealed, or abandoned the Stolen Cattle intending that such use, concealment, or abandonment will permanently deprive Titan of the use or benefit of the Stolen Cattle.

32.     In committing these unlawful acts Michael Corey acted both individually and as a representative of Corey Cattle.

33.     Pursuant to C.R.S. § 18-4-405 Titan is entitled to a judgment against Defendants, jointly and severally, for three times the amount of actual damages sustained by Titan, plus attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Conversion Against All Defendants)

34.     Titan incorporates the paragraphs above as if set forth fully in this paragraph.

35.     Defendants knowingly exercised control over the Stolen Cattle without Titan's authorization.

36.     Defendants did so with the specific intent of permanently depriving Titan of the Stolen Cattle.

37.     In committing these unlawful acts Michael Corey acted both individually and as a representative of Corey Cattle.

38.     Titan is entitled to a judgment against Defendants, jointly and severally, for the value of the Stolen Cattle.

## THIRD CLAIM FOR RELIEF
### (Fraud Against All Defendants)

39.     Titan incorporates the paragraphs above as if set forth fully in this paragraph.

40.     Defendants made false representations to Titan that the Stolen Cattle were in Defendants' custody and held for Titan's benefit when in truth Defendants had sold, transferred, or otherwise disposed of the Stolen Cattle.

41.     Defendants made false representations to Titan that Defendants were incurring costs for the feed and care of the Stolen Cattle and that Titan owed Corey Cattle for those costs.

42.     These facts were material to Titan in that Titan had paid significant sums for the Stolen Cattle.

43.     Defendants misrepresented these facts:

a.     Knowing they were false;

6

DN 3724601.1

b.        Knowing that Titan was not aware of their falsity; and

c.        With the intent that Titan would rely on the misrepresented facts by not demanding possession of the Stolen Cattle and by paying falsified Feed Bills.

44.    Titan relied on Defendants' false statements by not demanding possession of the Stolen Cattle and by paying falsified Feed Bills.

45.    Titan's reliance was justified because Defendants supported their false representations with documents and because Titan had no reason to disbelieve Defendants.

46.    Titan's reliance on Defendants' false statements caused Titan damages in the form of lost value of the Stolen Cattle and payments made to Defendants for falsified Feed Bills.

47.    Defendants concealed their sale, transfer, or disposition of the Stolen Cattle from Titan.

48.    Defendants' sale, transfer, or disposition of the Stolen Cattle was material to Titan due to Titan's significant investment in the Stolen Cattle.

49.    Defendants concealed their sale, transfer, or disposition of the Stolen Cattle from Titan with the intent

a.        Of creating a false impression in the mind of Titan that the Stolen Cattle were still being held for Titan's benefit; and

b.        That Titan take a course of action it might not take if it knew the actual facts namely, demanding return of the Stolen Cattle.

50.    Titan took such action or decided not to act relying on the assumption that Defendants were holding the Stolen Cattle for Titan's benefit.

51.    Titan's reliance was justified.

52.    Titan's reliance caused damages to Titan in the form of loss of the Stolen Cattle's value and payment of falsified Feed Bills.

53.    In committing these unlawful acts Michael Corey acted both individually and as a representative of Corey Cattle.

54.    Titan is entitled to a judgment against Defendants for all actual, consequential, and incidental damages caused by Defendants' fraudulent misrepresentation and fraudulent concealment.

DN 3724601.1

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract – Contract #2 – Against Corey Cattle)

55.     Titan incorporates the paragraphs above as if set forth fully in this paragraph.

56.     Contract #2 is a valid and binding agreement between Titan and Corey Cattle.

57.     Titan performed all conditions precedent to its right to demand performance by Corey Cattle of its obligations under the Contract #2.

58.     Corey Cattle breached the Contract #2 by failing to repurchase the Stolen Cattle from Titan in accordance with the terms of Contract #2.

59.     Corey Cattle's breach of Contract #2 has caused Titan damages in the form of lost and diminished sales of the Recovered Cattle and the Stolen Cattle encompassed within Contract #2.

60.     Titan is entitled to a judgment against Corey Cattle for Corey Cattle's breach of Contract #2 in the amount of Titan's actual, incidental, and consequential damages plus prejudgment interest, post judgment interest, and attorneys' fees and costs permitted by law

## FIFTH CLAIM FOR RELIEF
### (Breach of Contract – Contract #3 – Against Corey Cattle)

61.     Titan incorporates the paragraphs above as if set forth fully in this paragraph.

62.     Contract #3 is a valid and binding agreement between Titan and Corey Cattle.

63.     Titan performed all conditions precedent to its right to demand performance by Corey Cattle of its obligations under the Contract #3.

64.     Corey Cattle breached the Contract #3 by failing to repurchase Recovered Cattle and the Stolen Cattle from Titan in accordance with the terms of Contract #3.

65.     Corey Cattle's breach of Contract #3 has caused Titan damages in the form of lost and diminished sales of the Recovered Cattle and Stolen Cattle encompassed within Contract #3.

66.     Titan is entitled to a judgment against Corey Cattle for Corey Cattle's breach of Contract #3 in the amount of Titan's actual, incidental, and consequential damages plus prejudgment interest, post judgment interest, and attorneys' fees and costs permitted by law.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract – Contract #5 – Against Corey Cattle)

67.     Titan incorporates the paragraphs above as if set forth fully in this paragraph.

DN 3724601.1

68.     Contract #5 is a valid and binding agreement between Titan and Corey Cattle.

69.     Titan performed all conditions precedent to its right to demand performance by Corey Cattle of its obligations under the Contract #5.

70.     Corey Cattle breached the Contract #5 by failing to repurchase Recovered Cattle and Stolen Cattle from Titan in accordance with the terms of Contract #5.

71.     Corey Cattle's breach of Contract #5 has caused Titan damages in the form of lost and diminished sales of the Recovered Cattle and Stolen Cattle encompassed within Contract #5.

72.     Titan is entitled to a judgment against Corey Cattle for Corey Cattle's breach of Contract #5 in the amount of Titan's actual, incidental, and consequential damages plus prejudgment interest, post judgment interest, and attorneys' fees and costs permitted by law.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Contract – Contract #6 – Against Corey Cattle)

73.     Titan incorporates the paragraphs above as if set forth fully in this paragraph.

74.     Contract #6 is a valid and binding agreement between Titan and Corey Cattle.

75.     Titan performed all conditions precedent to its right to demand performance by Corey Cattle of its obligations under the Contract #6.

76.     Corey Cattle breached the Contract #6 by failing to repurchase Recovered Cattle and Stolen Cattle from Titan in accordance with the terms of Contract #6.

77.     Corey Cattle's breach of Contract #6 has caused Titan damages in the form of lost and diminished sales of the Recovered Cattle and the Stolen Cattle encompassed within Contract #6.

78.     Titan is entitled to a judgment against Corey Cattle for Corey Cattle's breach of Contract #6 in the amount of Titan's actual, incidental, and consequential damages plus prejudgment interest, post judgment interest, and attorneys' fees and costs permitted by law.

## RESERVATION OF RIGHT TO PLEAD EXEMPLARY DAMAGES

Pursuant to C.R.S. § 13-21-102(1.5), Titan reserves the right to amend its Complaint, after the parties exchange C.R.C.P. 26(a)(1) initial disclosures, to assert a claim for exemplary damages arising from Defendants' fraud, malice, or willful and wanton conduct.

DN 3724601.1

## PRAYER FOR RELIEF

Titan prays the Court for judgment in favor of Titan and against Corey Cattle and Michael Corey, jointly and severally, as follows:

A.    An award of all actual damages including, without limitation, not less than $1,911,235 plus the value of cattle sold for less than agreed in the parties' contracts;

B.    An award of all consequential and incidental damages including, without limitation, business, credit, and cash flow interruption caused by Defendants' actions;

C.    An award of treble damages pursuant to C.R.S. § 18-4-405;

D.    An award of attorneys' fees and costs as permitted by law including, without limitation, C.R.S. § 18-4-405;

E.    Prejudgment interest and post judgment interest; and

F.    For all such other and further relief as the Court may deem just and equitable in favor of Titan.

## JURY DEMAND

Pursuant to C.R.C.P. 38 Titan demands a trial by jury on all claims so triable.

DATED:  August 7, 2019.

Respectfully submitted,
SPENCER FANE LLP

By: */s/ Scott C. Sandberg*
John O'Brien (#15183)
Scott C. Sandberg (#33566)
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: 303.839.3800
jobrien@spencerfane.com; ssandberg@spencerfane.com
*Attorneys for Plaintiff Titan Feeding LLC*

Plaintiff's Address:
123 N. College Avenue, Suite 350
Fort Collins, CO  80524

DN 3724601.1

# AGREEMENT TO PURCHASE, FEED AND RE-SELL CROSS WAGYU CATTLE
**(Number Two)**

This Agreement To Purchase, Feed and Re-Sell Cross Wagyu Cattle ("Agreement") is made and entered into as of the 19th day of July, 2017 by and between Titan Feeding LLC ("Titan") whose address is 123 N. College Avenue, Suite 350, Fort Collins, Colorado 80524 and Corey Cattle Company, LLC whose address is 1220 N. 4000 W., Delta, Utah 84624-7216 ("Corey Cattle") (sometimes, a "Party" and collectively, the "Parties").

## RECITALS

A.     Corey Cattle and Titan are in the business of the production and marketing of cattle.

B.     Corey Cattle and Titan desire to enter into cattle transactions in accordance with the terms and provisions of this Agreement.

## AGREEMENTS

Now, therefore, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

A.     The First Purchase Agreement

1.     First Purchase and Sale of Cattle.  On July 19, 2017 (the "First Purchase Date") Titan agrees to purchase from Corey Cattle, and Corey Cattle agrees to sell to Titan 564 head of good quality Wagyu Cross Cattle (the "First Purchase") described below (the "Cattle"):

| Pen | Breed | Type | # of Head | Estimated Wt. |
|-----|-------|------|-----------|---------------|
| 7N | Dairy Cross | Hfr | 108 | 570 |
| 1N | Dairy Cross | Hfr | 207 | 515 |
| 5N | Dairy Cross | Str | 249 | 535 |
| Total | | | 564 | |

2.     First Purchase Price.  The purchase price for the First Purchase of the Cattle is $615,738.48 (the "First Purchase Price").

3.     Corey Cattle's Lenders.  Corey Cattle represents and warrants to Titan that the names and addresses of all of its lenders during the last five years which may have taken a security interest in Corey Cattle's livestock, inventory or farm products are as follows:

| Name | Address |
|------|---------|
| Western AgCredit | 51 E. 400 N. #2B, Cedar City, UT  84721 |

2506797.2

EXHIBIT 1                    Page 1 of 7

4.     Payment of First Purchase Price.  The First Purchase Price shall be promptly paid in good funds by Titan to Corey Cattle.  Payment of the First Purchase Price shall be made by check jointly payable to Corey Cattle and Western AgCredit, and sent to Corey Cattle at the address set forth in Section 22 below.

5.     Delivery.  The delivery of the Cattle to Titan shall be at Corey Cattle's feedyard located at 1220 N. 4000 W., Delta, Utah 84624 (the, "First Delivery").  The First Delivery shall be on the First Purchase Date.

6.     Warranty of Title.  Corey Cattle warrants that it has good title to all Cattle subject to only a lien in favor of Western AgCredit, which lien shall be discharged by joint payee check for the First Purchase Price.  Title to the Cattle shall pass to Titan upon the First Delivery.

B.     Feeding Services Agreement

7.     Branding.  Promptly upon the First Delivery Corey Cattle shall, at Corey Cattle's expense, brand all Cattle with Titan's brand.  Titan's brand is designated as follows:



8.     Corey Cattle's Warranties.  Corey Cattle represents and warrants that Corey Cattle is presently engaged in the business of feeding and caring for cattle for third party customers, and has and will continue to maintain such personnel, equipment, affiliations, and operating resources as are necessary to discharge Corey Cattle's feed and care responsibilities under this Agreement.

9.     Care of Cattle.  Corey Cattle shall accept, care for, and provide feed, water, and minerals for the Cattle in accordance with good standards of care, responsibility, and good animal husbandry generally accepted in the industry.  Corey Cattle shall take good and customary preventive measures to ward off all diseases, maladies, and injuries to the Cattle. Corey Cattle shall refrain from using any medication, feed, feed supplement, or method of care which may violate any state, local, or federal law or regulation, and shall otherwise comply with all federal and state laws and regulations which are applicable to the performance of Corey Cattle's obligations under this Agreement.  Corey Cattle shall regularly and systematically inspect the Cattle for symptoms of sickness and disease and shall obtain such veterinary services and care for the Cattle as may be reasonable and necessary for the proper care of the Cattle.  Corey Cattle shall, if requested by Titan from time to time, estimate the date on which particular Cattle will reach market weight.  Corey Cattle shall notify Titan of the death of any of the Cattle, stating details sufficient to identify the animal and the date and cause of death.

10.    Payments By Titan For Feed And Care Services.  Corey Cattle's compensation for the feed and care services to be provided herein shall be governed by Corey Cattle's Standard Custom Feeding Agreement concerning the Cattle of even date herewith (the "Custom Feeding Agreement"), which compensation shall be itemized in monthly feed bills which shall include accrued interest for feed and care charges (the "Feed Bills"); provided, however, that in the event of

2

2506797.2

EXHIBIT 1                    Page 2 of 7

a conflict between this Agreement and the Custom Feeding Agreement the terms of this Agreement shall control. The Feed Bills shall be paid as follows:

    (a)    Titan shall pay 80% of each Feed Bill within 15 days of receipt; and

    (b)    The balance of each Feed Bill will be paid from the payment of the Second Sales Price described in Section 17(c) below.

    11.    Risk of Loss; Insurance. Title to the Cattle shall remain solely in Titan until Titan's receipt of the Second Sales Price as described below. Death Loss shall be shared as stated in Corey Cattle's Custom Feeding Agreement. Corey Cattle shall bear all risk of loss of death to such Cattle from any cause whatsoever in excess of Titan's share of death loss. Corey Cattle shall, at Corey Cattle's expense, arrange for normal peril insurance for the benefit of Titan and satisfactory to Titan in regard to death of Cattle while located with Corey Cattle. All policies of such insurance shall name Titan as the insured.

    12.    Records on Cattle. In addition to any records required to be kept by law, Corey Cattle shall, at Corey Cattle's expense, keep and maintain the following complete and accurate records concerning as the Cattle:

    (a)    the date received by Corey Cattle;

    (b)    the date branded by Corey Cattle;

    (c)    the ear tag or lot identification number, if any, assigned by Corey Cattle;

    (d)    the pen location;

    (e)    the details on quantity and ingredients of feed rations fed to the Cattle;

    (f)    any veterinary services and supplies furnished by Corey Cattle;

    (g)    the date or dates on which Cattle were removed from the custody of Corey Cattle;

    (h)    Cattle pen locations;

    (i)    a general health profile, including whether veterinary services were necessary and administered;

    (j)    details relating to timing and cause of any deaths;

    (k)    Corey Cattle shall deliver to Titan each month a written statement showing the number of Cattle in the possession or control of Corey Cattle during the preceding calendar month, the amount, costs, and type of feed and veterinary services and supplies given to Cattle during the preceding calendar month and since the day of delivery of the Cattle to Corey Cattle; and

    (l)    The Feed Bills.

3

13.   <u>Titan's Right To Inspect; Reports.</u>  Titan may, at any time during Corey Cattle's regular business hours, inspect the Cattle and examine, copy and audit Corey Cattle's records relating to the Cattle and any other records kept by Corey Cattle pertaining to the performance of this Agreement.

14.   <u>Sale, Removal And Release Of Cattle.</u>  Titan shall have the right at any time to remove any or all of the Cattle from the custody of Corey Cattle, provided that Titan pays to Corey Cattle all Feed Bills accrued up to the date of removal.  Upon such removal, the feeding services provisions of this Agreement shall be deemed terminated in respect to those Cattle which are so removed.

15.   <u>Termination Of Feeding Services.</u>  Either Corey Cattle or Titan may terminate the feeding services provisions of this Agreement for any reason and to withdraw (or require the withdrawal of) the Cattle from the custody of Corey Cattle promptly thereafter.  Without prejudice to any other remedy it may have at law or in equity under this Agreement or otherwise, Titan may terminate this Agreement at any time if Corey Cattle should seek or suffer the appointment of a receiver to take possession of all or substantially all of Corey Cattle's property, make a general assignment for the benefit of creditors, or allow any judgment against Corey Cattle to remain unsatisfied or unbonded for more than thirty (30) days.  Upon any termination of this Agreement by either party, Corey Cattle shall continue to feed and care for the Cattle pursuant to the terms of this Agreement until all charges owned by Titan are paid in full and until the Cattle are removed from Corey Cattle's care by Titan or otherwise disposed of under applicable law.  Termination of this Agreement will not diminish or terminate the rights and obligations of the Parties in regard to acts or occurrences prior to the effective date of termination.  Any termination of the feeding services provisions of this Agreement shall not terminate Corey Cattle's Second Purchase obligation stated below.

C.   <u>Second Purchase Agreement</u>

16.   <u>Second Purchase and Sale of Cattle.</u>  Once each pen of Cattle reach a fat weight of approximately 1,400 to 1,450 pounds per head (the "Second Purchase Date") Corey Cattle agrees to purchase from Titan, and Titan agrees to sell to Corey Cattle the Cattle in that pen, less deads (the "Second Purchase").

17.   <u>Second Purchase Price.</u>  The purchase price for the Second Purchase of the Cattle is calculated as (the "Second Purchase Price"):

(a)   First, take the First Purchase Price allocable to each pen of Cattle shown in <u>Section 1</u>;

(b)   Second, add to it a premium per head for the applicable pen in accordance with the premium schedule stated below based upon the estimated weight of the Cattle stated in <u>Section 1</u> (the "Premium"):

| Pen | Premium/hd |
| --- | --- |
| 7N | $205 |
| 1N | $205 |
| 5N | $205 |

2506797.2

4

EXHIBIT 1 _____   Page 4 of 7

(c) Third, add the balance of the Feed Bill owed for each applicable pen of Cattle not previously paid pursuant to Section 10(a); and

(d) Fourth, adjust the Premium by the following slide to the extent the actual weight at the time of the First Purchase is greater than the estimated weight stated in Section 1 (the "Slide");

| Actual In Weight Per Pen | Slide/hd |
|---|---|
| 550 to 649 | $205 |
| 650 to 749 | $165 |
| 750 to 849 | $135 |
| 850 or above | $110 |

The Second Purchase Price shall be payable when each applicable pen is at a fat weight. Upon receipt of the Second Purchase Price for each pen Titan shall pay the Feed Bill for that pen.

18. <u>Titan's Lenders.</u> Titan represents and warrants to Corey Cattle that it has no lender requiring payment of the Second Purchase Price to discharge any lien. Titan agrees to inform Corey Cattle promptly if any third party obtains a lien on the Cattle while owned by Titan, including the identity of and contact information for any such lender.

19. <u>Payment of Second Purchase Price.</u> The Second Purchase Price shall be promptly paid by Corey Cattle to Titan. Payment of the Second Purchase Price shall be made by wire transfer to Titan in accordance with the following wire instructions:

Rabobank, N.A.
PO Box 6002
Arroyo Grande, CA 93421-6002

ABA# 122238420
DDA# 867678599

20. <u>Delivery; Title.</u> The delivery of the Cattle to Corey Cattle shall be at Corey Cattle's Feedyard located at 1220 N. 4000 W., Delta, Utah 84624 (hereafter, "Second Delivery"). The Second Delivery of each pen shall be on the Second Purchase Date and only after receipt of the Second Purchase Price for each pen of Cattle. Title for each pen of Cattle will pass to Corey Cattle only after Titan receives the Second Purchase Price for that pen.

21. <u>Warranty of Title.</u> Titan warrants that it will have good title to all Cattle which are the subject of this Agreement at the time of the Second Purchase Date.

22. <u>Notices.</u> All notices required or permitted to be given hereunder (hereafter, a "Notice"), unless otherwise specified, shall be in writing and shall be deemed properly given when delivered in person to the Party to be notified, or when sent by facsimile to the Party to be

2506797.2

5

**EXHIBIT 1**                                        **Page 5 of 7**

notified at its address set forth below, or such other address as the Party to be notified may have designated prior thereto by written Notice to the other:

If to Titan:

Titan Feeding LLC
Attn: Nolan Stone
Director of Procurement
123 N. College Avenue,
Suite 350
Fort Collins, CO 80524
Telephone: 970-590-5783
Fax: _____

If to Corey Cattle:

Corey Cattle Co LLC
Attn: Mike Corey
Manager
1220 N. 4000 W.
Delta, UT 84624-7216
Telephone: _____
Fax: _____

23. **Relationship of Parties.** Titan and Corey Cattle agree that this is an Agreement dealing with the purchase and re-sale and feeding of certain animals, and that nothing in this Agreement shall constitute either Corey Cattle or Titan as agent, representative, partner, joint venture, livestock lender, livestock borrower or employee of the other Party in their respective operations. Neither Corey Cattle or Titan shall have, nor shall either represent itself as having, any right, power or authority to create any agreement or obligations, either express or implied, on behalf of, in the name of, or binding upon the other party, or to pledge the other's credit or to extend credit in the other's name. Further, nothing herein constitutes a credit or financing agreement between Corey Cattle and Titan or a commitment by Titan to finance any of Corey Cattle's operations.

24. **Successors and Assigns.** This Agreement and all the terms and provisions hereof shall be binding upon and shall inure to the benefit of the Parties and their respective legal representatives, successors and permitted assigns. Any person acquiring or claiming an interest in a Party, in any manner whatsoever, shall be subject to and bound by all the terms, conditions and obligations of this Agreement to which its predecessor in interest was subject or bound, without regard to whether such person has executed this Agreement or a counterpart hereof or any rights to obligations relating to the Agreement greater than those set forth herein.

25. **Modification.** This Agreement and the Custom Feeding Agreement constitute the entire understanding of the Parties with respect to the subject matter hereof and supersedes any and all prior negotiations, understandings, and agreements in regard hereto. No amendment, modification or alteration of the terms hereof shall be binding unless that same is signed by both Parties.

26.     Assignment. No assignment of this Agreement shall be binding or allowed unless approved in writing by the non-assigning Party.

27.     No Third Party Rights. This Agreement and the covenants and agreements contained herein are solely for the benefit of the Parties hereto. No other person shall be entitled to enforce or make any claims of have any rights pursuant to the provisions of this Agreement.

28.     Governing Law. This Agreement shall be governed in accordance with the laws of the State of Colorado, and any dispute under this Agreement shall be heard by courts of competent jurisdiction located in the State of Colorado.

TITAN FEEDING LLC                           COREY CATTLE COMPANY, LLC

By: _____              By: _____
    Nolan Stone                                 Mike Corey
Its: Director of Procurement                Its: Manager

2506797.2                          7

EXHIBIT 1                          Page 7 of 7

9/7/2017

Scan_20170906.png

Deal #3

E-MAILED  SEP - 7 2017

## AGREEMENT TO PURCHASE, FEED AND RE-SELL CROSS WAGYU CATTLE
### (Number Three)

This Agreement To Purchase, Feed and Re-Sell Wagyu Cattle ("Agreement") is made and entered into as of the 23rd day of August, 2017 by and between Titan Feeding LLC ("Titan") whose address is 123 N. College Avenue, Suite 350, Fort Collins, Colorado 80524 and Corey Cattle Company, LLC whose address is 1220 N. 4000 W., Delta, Utah 84624-7216 ("Corey Cattle") (sometimes, a "Party" and collectively, the "Parties").

### RECITALS

A.     Corey Cattle and Titan are in the business of the production and marketing of cattle.

B.     Corey Cattle and Titan desire to enter into cattle transactions in accordance with the terms and provisions of this Agreement.

### AGREEMENTS

Now, therefore, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

A.     The First Purchase Agreement

1.     First Purchase and Sale of Cattle.  On August 23, 2017 (the "First Purchase Date") Titan agrees to purchase from Corey Cattle, and Corey Cattle agrees to sell to Titan 475 head of good quality Wagyu Cross Cattle (the "First Purchase") described below (the "Cattle"):

| Pen | Breed | Type | # of Head | Estimated Wt. |
|-----|-------|------|-----------|---------------|
| A | Wagyu Cross | Mixed | 150 | 565 |
| 3N | Wagyu Cross | Mixed | 218 | 460 |
| 1N | Wagyu Cross | Steers | 54 | 605 |
| 19 N | Wagyu Cross | Heifer | 57 | 590 |
| Total | | | 479 | |

2.     First Purchase Price.  The purchase price for the First Purchase of the Cattle is $513,280.46 (the "First Purchase Price").

3.     Corey Cattle's Lenders.  Corey Cattle represents and warrants to Titan that the names and addresses of all of its lenders during the last five years which may have taken a security interest in Corey Cattle's livestock, inventory or farm products are as follows:

| Name | Address |
|------|---------|
| Western AgCredit | 51 E. 400 N. #2B, Cedar City, UT  84721 |

DN 2685145 1

https://mail.google.com/mail/u/0/?tab=wm#inbox/15e59d8618be2e50?projector=1

1/1

EXHIBIT 2

Page 1 of 7

Scan_20170906 (2).png

#5

4. <u>Payment of First Purchase Price</u>. The First Purchase Price shall be promptly paid in good funds by Titan to Corey Cattle. Payment of the First Purchase Price shall be made by check jointly payable to Corey Cattle and Western AgCredit, and sent to Corey Cattle at the address set forth in <u>Section 22</u> below.

5. <u>Delivery</u>. The delivery of the Cattle to Titan shall be at Corey Cattle's feedyard located at 1220 N. 4000 W., Delta, Utah 84624 (the, "First Delivery"). The First Delivery shall be on the First Purchase Date.

6. <u>Warranty of Title</u>. Corey Cattle warrants that it has good title to all Cattle subject to only a lien in favor of Western AgCredit, which lien shall be discharged by joint payee check for the First Purchase Price. Title to the Cattle shall pass to Titan upon the First Delivery.

B. <u>Feeding Services Agreement</u>

7. <u>Branding</u>. Promptly upon the First Delivery Corey Cattle shall, at Corey Cattle's expense, brand all Cattle with Titan's brand. Titan's brand is designated as follows:



8. <u>Corey Cattle's Warranties</u>. Corey Cattle represents and warrants that Corey Cattle is presently engaged in the business of feeding and caring for cattle for third party customers, and has and will continue to maintain such personnel, equipment, affiliations, and operating resources as are necessary to discharge Corey Cattle's feed and care responsibilities under this Agreement.

9. <u>Care of Cattle</u>. Corey Cattle shall accept, care for, and provide feed, water, and minerals for the Cattle in accordance with good standards of care, responsibility, and good animal husbandry generally accepted in the industry. Corey Cattle shall take good and customary preventive measures to ward off all diseases, maladies, and injuries to the Cattle. Corey Cattle shall refrain from using any medication, feed, feed supplement, or method of care which may violate any state, local, or federal law or regulation, and shall otherwise comply with all federal and state laws and regulations which are applicable to the performance of Corey Cattle's obligations under this Agreement. Corey Cattle shall regularly and systematically inspect the Cattle for symptoms of sickness and disease and shall obtain such veterinary services and care for the Cattle as may be reasonable and necessary for the proper care of the Cattle. Corey Cattle shall, if requested by Titan from time to time, estimate the date on which particular Cattle will reach market weight. Corey Cattle shall notify Titan of the death of any of the Cattle, stating details sufficient to identify the animal and the date and cause of death.

10. <u>Payments By Titan For Feed And Care Services</u>. Corey Cattle's compensation for the feed and care services to be provided herein shall be governed by Corey Cattle's Standard Custom Feeding Agreement concerning the Cattle of even date herewith (the "Custom Feeding Agreement"), which compensation shall be itemized in monthly feed bills which shall include accrued interest for feed and care charges (the "Feed Bills"); provided, however, that in the event of

2

DN 2685145.1

EXHIBIT 2

Page 2 of 7

a conflict between this Agreement and the Custom Feeding Agreement the terms of this Agreement shall control. The Feed Bills shall be paid as follows:

(a)     Titan shall pay 80% of each Feed Bill within 15 days of receipt; and

(b)     The balance of each Feed Bill will be paid from the payment of the Second Sales Price described in Section 17(c) below.

11.     Risk of Loss; Insurance. Title to the Cattle shall remain solely in Titan until Titan's receipt of the Second Sales Price as described below. Death Loss shall be shared as stated in Corey Cattle's Custom Feeding Agreement. Corey Cattle shall bear all risk of loss of death to such Cattle from any cause whatsoever in excess of Titan's share of death loss. Corey Cattle shall, at Corey Cattle's expense, arrange for normal peril insurance for the benefit of Titan and satisfactory to Titan in regard to death of Cattle while located with Corey Cattle. All policies of such insurance shall name Titan as the insured.

12.     Records on Cattle. In addition to any records required to be kept by law, Corey Cattle shall, at Corey Cattle's expense, keep and maintain the following complete and accurate records concerning as the Cattle:

(a)     the date received by Corey Cattle;

(b)     the date branded by Corey Cattle;

(c)     the ear tag or lot identification number, if any, assigned by Corey Cattle;

(d)     the pen location;

(e)     the details on quantity and ingredients of feed rations fed to the Cattle;

(f)     any veterinary services and supplies furnished by Corey Cattle;

(g)     the date or dates on which Cattle were removed from the custody of Corey Cattle;

(h)     Cattle pen locations;

(i)     a general health profile, including whether veterinary services were necessary and administered;

(j)     details relating to timing and cause of any deaths;

(k)     Corey Cattle shall deliver to Titan each month a written statement showing the number of Cattle in the possession or control of Corey Cattle during the preceding calendar month, the amount, costs, and type of feed and veterinary services and supplies given to Cattle during the preceding calendar month and since the day of delivery of the Cattle to Corey Cattle; and

(l)     The Feed Bills.

3                                           DN 2685145.1

EXHIBIT 2                              Page 3 of 7

Scan_20170906 (4).png

#3

13.   **Titan's Right To Inspect; Reports.**  Titan may, at any time during Corey Cattle's regular business hours, inspect the Cattle and examine, copy and audit Corey Cattle's records relating to the Cattle and any other records kept by Corey Cattle pertaining to the performance of this Agreement.

14.   **Sale, Removal And Release Of Cattle.**  Titan shall have the right at any time to remove any or all of the Cattle from the custody of Corey Cattle, provided that Titan pays to Corey Cattle all Feed Bills accrued up to the date of removal.  Upon such removal, the feeding services provisions of this Agreement shall be deemed terminated in respect to those Cattle which are so removed.

15.   **Termination Of Feeding Services.**  Either Corey Cattle or Titan may terminate the feeding services provisions of this Agreement for any reason and to withdraw (or require the withdrawal of) the Cattle from the custody of Corey Cattle promptly thereafter.  Without prejudice to any other remedy it may have at law or in equity under this Agreement or otherwise, Titan may terminate this Agreement at any time if Corey Cattle should seek or suffer the appointment of a receiver to take possession of all or substantially all of Corey Cattle's property, make a general assignment for the benefit of creditors, or allow any judgment against Corey Cattle to remain unsatisfied or unbonded for more than thirty (30) days.  Upon any termination of this Agreement by either party, Corey Cattle shall continue to feed and care for the Cattle pursuant to the terms of this Agreement until all charges owned by Titan are paid in full and until the Cattle are removed from Corey Cattle's care by Titan or otherwise disposed of under applicable law.  Termination of this Agreement will not diminish or terminate the rights and obligations of the Parties in regard to acts or occurrences prior to the effective date of termination.  Any termination of the feeding services provisions of this Agreement shall not terminate Corey Cattle's Second Purchase obligation stated below.

C.   _Second Purchase Agreement_

16.   **Second Purchase and Sale of Cattle.**  Once each pen of Cattle reach a fat weight of approximately 1,400 to 1,450 pounds per head (the "Second Purchase Date") Corey Cattle agrees to purchase from Titan, and Titan agrees to sell to Corey Cattle the Cattle in that pen, less deads (the "Second Purchase").

17.   **Second Purchase Price.**  The purchase price for the Second Purchase of the Cattle is calculated as (the "Second Purchase Price"):

(a)   First, take the First Purchase Price allocable to each pen of Cattle shown in Section 1;

(b)   Second, add to it a premium per head for the applicable pen in accordance with the premium schedule stated below based upon the estimated weight of the Cattle stated in Section 1 (the "Premium"):

| Pen | Premium/hd |
|-----|-----------|
| A | $ 205 |
| 9N | $ 205 |
| 11N | $ 205 |
| 19N | 4  205 |

DN 2685145.1

https://mail.google.com/mail/u/0/?tab=wm#inbox/15e59d8618be2e50?projector=1

EXHIBIT 2                                    Page 4 of 7

(c)   Third, add the balance of the Feed Bill owed for each applicable pen of Cattle not previously paid pursuant to Section 10(a); and

(d)   Fourth, adjust the Premium by the following slide to the extent the actual weight at the time of the First Purchase is greater than the estimated weight stated in Section 1 (the "Slide");

| Actual In Weight Per Pen | Slide/hd |
| --- | --- |
| 550 to 649 | $205 |
| 650 to 749 | $165 |
| 750 to 849 | $135 |
| 850 or above | $110 |

The Second Purchase Price shall be payable when each applicable pen is at a fat weight. Upon receipt of the Second Purchase Price for each pen Titan shall pay the Feed Bill for that pen.

18.    **Titan's Lenders.**  Titan represents and warrants to Corey Cattle that it has no lender requiring payment of the Second Purchase Price to discharge any lien. Titan agrees to inform Corey Cattle promptly if any third party obtains a lien on the Cattle while owned by Titan, including the identity of and contact information for any such lender.

19.    **Payment of Second Purchase Price.**  The Second Purchase Price shall be promptly paid by Corey Cattle to Titan. Payment of the Second Purchase Price shall be made by wire transfer to Titan in accordance with the following wire instructions:

Rabobank, N.A.
PO Box 6002
Arroyo Grande, CA  93421-6002

ABA# 122238420
DDA# 867678599

20.    **Delivery; Title.**  The delivery of the Cattle to Corey Cattle shall be at Corey Cattle's Feedyard located at 1220 N. 4000 W., Delta, Utah 84624 (hereafter, "Second Delivery"). The Second Delivery of each pen shall be on the Second Purchase Date and only after receipt of the Second Purchase Price for each pen of Cattle. Title for each pen of Cattle will pass to Corey Cattle only after Titan receives the Second Purchase Price for that pen.

21.    **Warranty of Title.**  Titan warrants that it will have good title to all Cattle which are the subject of this Agreement at the time of the Second Purchase Date.

22.    **Notices.**  All notices required or permitted to be given hereunder (hereafter, a "Notice"), unless otherwise specified, shall be in writing and shall be deemed properly given when delivered in person to the Party to be notified, or when sent by facsimile to the Party to be

5

DN 2685145.1

EXHIBIT 2                                      Page 5 of 7

Scan_20170906 (6).png

#3

notified at its address set forth below, or such other address as the Party to be notified may have designated prior thereto by written Notice to the other:

If to Titan:

Titan Feeding LLC
Attn: Hugh Skoedopole
Operations Manager
123 N. College Avenue,
Suite 350
Fort Collins, CO 80524
Telephone: 970-590-5783
Fax: _____

If to Corey Cattle:

Corey Cattle Co LLC
Attn: Mike Corey
Manager
1220 N. 4000 W.
Delta, UT 84624-7216
Telephone: 435-406-9081
Fax: _____

23.   Relationship of Parties.  Titan and Corey Cattle agree that this is an Agreement dealing with the purchase and re-sale and feeding of certain animals, and that nothing in this Agreement shall constitute either Corey Cattle or Titan as agent, representative, partner, joint venture, livestock lender, livestock borrower or employee of the other Party in their respective operations.  Neither Corey Cattle or Titan shall have, nor shall either represent itself as having, any right, power or authority to create any agreement or obligations, either express or implied, on behalf of, in the name of, or binding upon the other party, or to pledge the other's credit or to extend credit in the other's name.  Further, nothing herein constitutes a credit or financing agreement between Corey Cattle and Titan or a commitment by Titan to finance any of Corey Cattle's operations.

24.   Successors and Assigns.  This Agreement and all the terms and provisions hereof shall be binding upon and shall inure to the benefit of the Parties and their respective legal representatives, successors and permitted assigns.  Any person acquiring or claiming an interest in a Party, in any manner whatsoever, shall be subject to and bound by all the terms, conditions and obligations of this Agreement to which its predecessor in interest was subject or bound, without regard to whether such person has executed this Agreement or a counterpart hereof or any rights to obligations relating to the Agreement greater than those set forth herein.

25.   Modification.  This Agreement and the Custom Feeding Agreement constitute the entire understanding of the Parties with respect to the subject matter hereof and supersedes any and all prior negotiations, understandings, and agreements in regard hereto.  No amendment, modification or alteration of the terms hereof shall be binding unless that same is signed by both Parties.

6

DN 2685145.1

EXHIBIT 2                          Page 6 of 7

9/7/2017

Scan_20170906 (7).png

#3

26.   <u>Assignment</u>.  No assignment of this Agreement shall be binding or allowed unless approved in writing by the non-assigning Party.

27.   <u>No Third Party Rights</u>.  This Agreement and the covenants and agreements contained herein are solely for the benefit of the Parties hereto.  No other person shall be entitled to enforce or make any claims of have any rights pursuant to the provisions of this Agreement.

28.   <u>Governing Law</u>.  This Agreement shall be governed in accordance with the laws of the State of Colorado, and any dispute under this Agreement shall be heard by courts of competent jurisdiction located in the State of Colorado.

TITAN FEEDING LLC

By: _____
Hugh Skoddopole
Its:   Operations Manager

COREY CATTLE COMPANY, LLC

By: _____
Mike Corey
Its:   Manager

7

DN 2685145.1

EXHIBIT 2                    Page 7 of 7

*Deal #5*

## AGREEMENT TO PURCHASE, FEED AND RE-SELL CROSS WAGYU CATTLE
### (Number Five)

This Agreement To Purchase, Feed and Re-Sell Cross Wagyu Cattle ("Agreement") is made and entered into as of the 7th day of December, 2017 by and between Titan Feeding LLC ("Titan") whose address is 123 N. College Avenue, Suite 215, Fort Collins, Colorado 80524 and Corey Cattle Company, LLC whose address is 1220 N. 4000 W., Delta, Utah 84624-7216 ("Corey Cattle") (sometimes, a "Party" and collectively, the "Parties").

### RECITALS

A.   Corey Cattle and Titan are in the business of the production and marketing of cattle.

B.   Corey Cattle and Titan desire to enter into cattle transactions in accordance with the terms and provisions of this Agreement.

### AGREEMENTS

Now, therefore, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

A.   <u>The First Purchase Agreement</u>

1.   <u>First Purchase and Sale of Cattle</u>.  On December 7, 2017 (the "First Purchase Date") Titan agrees to purchase from Corey Cattle, and Corey Cattle agrees to sell to Titan 490 head of good quality Wagyu Cross Cattle (the "First Purchase") described below (the "Cattle"):

| Lot | Pen | Breed | Type | # of Head | Estimated Wt. |
|-----|-----|-------|------|-----------|---------------|
| TW41 | 9L | Back × Wagyu Cross | Heifers | 130 | 680 |
| TW42 | 7L | Back × Wagyu Cross | Steers | 115 | 700 |
| TW41 | 6N | Dairy × Wagyu Cross | Heifers | 85 | 850 |
| TW4 | C | Dairy × Wagyu Cross | Mixed | 160 | 450 |
| | Total | | | 490 | |

2.   <u>First Purchase Price</u>.  The purchase price for the First Purchase of the Cattle is $571,098.20 (the "First Purchase Price").

3.   <u>Corey Cattle's Lenders</u>.  Corey Cattle represents and warrants to Titan that the names and addresses of all of its lenders during the last five years which may have taken a security interest in Corey Cattle's livestock, inventory or farm products are as follows:

| Name | Address |
|------|---------|
| Western AgCredit | 51 E. 400 N. #2B, Cedar City, UT  84721 |

DN 2862725.3

EXHIBIT 3

#5

4.    Payment of First Purchase Price.  The First Purchase Price shall be promptly paid in good funds by Titan to Corey Cattle.  Payment of the First Purchase Price shall be made by check jointly payable to Corey Cattle and Western AgCredit, and sent to Corey Cattle at the address set forth in Section 22 below.

5.    Delivery.  The delivery of the Cattle to Titan shall be at Corey Cattle's feedyard located at 1220 N. 4000 W., Delta, Utah 84624 (the, "First Delivery").  The First Delivery shall be on the First Purchase Date.

6.    Warranty of Title.  Corey Cattle warrants that it has good title to all Cattle subject to only a lien in favor of Western AgCredit, which lien shall be discharged by joint payee check for the First Purchase Price.  Title to the Cattle shall pass to Titan upon the First Delivery.

B.    Feeding Services Agreement

7.    Branding.  Promptly upon the First Delivery Corey Cattle shall, at Corey Cattle's expense, brand all Cattle with Titan's brand.  Titan's brand is designated as follows:



Left Rib Location

8.    Corey Cattle's Warranties.  Corey Cattle represents and warrants that Corey Cattle is presently engaged in the business of feeding and caring for cattle for third party customers, and has and will continue to maintain such personnel, equipment, affiliations, and operating resources as are necessary to discharge Corey Cattle's feed and care responsibilities under this Agreement.

9.    Care of Cattle.  Corey Cattle shall accept, care for, and provide feed, water, and minerals for the Cattle in accordance with good standards of care, responsibility, and good animal husbandry generally accepted in the industry.  Corey Cattle shall take good and customary preventive measures to ward off all diseases, maladies, and injuries to the Cattle. Corey Cattle shall refrain from using any medication, feed, feed supplement, or method of care which may violate any state, local, or federal law or regulation, and shall otherwise comply with all federal and state laws and regulations which are applicable to the performance of Corey Cattle's obligations under this Agreement.  Corey Cattle shall regularly and systematically inspect the Cattle for symptoms of sickness and disease and shall obtain such veterinary services and care for the Cattle as may be reasonable and necessary for the proper care of the Cattle. Corey Cattle shall, if requested by Titan from time to time, estimate the date on which particular Cattle will reach market weight.  Corey Cattle shall notify Titan of the death of any of the Cattle, stating details sufficient to identify the animal and the date and cause of death.

10.    Payments By Titan For Feed And Care Services.  Corey Cattle's compensation for the feed and care services to be provided herein shall be governed by Corey Cattle's Standard Custom Feeding Agreement concerning the Cattle of even date herewith (the "Custom Feeding Agreement"), which compensation shall be itemized in monthly feed bills which shall include accrued interest for feed and care charges (the "Feed Bills"); provided, however, that in the event of

2

DN 2862725.3

EXHIBIT 3                                                        Page 2 of 7

#5

a conflict between this Agreement and the Custom Feeding Agreement the terms of this Agreement shall control. The Feed Bills shall be paid with 30 days of invoice and no interest shall accrue if paid within 30 days of invoice.

11.    Risk of Loss; Insurance. Title to the Cattle shall remain solely in Titan until Titan's receipt of the Second Sales Price as described below. Corey Cattle shall bear all risk of loss of death to such Cattle from any cause whatsoever, to include feed costs for deads. Corey Cattle shall, at Corey Cattle's expense, arrange for normal peril insurance for the benefit of Titan and satisfactory to Titan in regard to death of Cattle while located with Corey Cattle. All policies of such insurance shall name Titan as the insured.

12.    Records on Cattle. In addition to any records required to be kept by law, Corey Cattle shall, at Corey Cattle's expense, keep and maintain the following complete and accurate records concerning as the Cattle:

(a)    the date received by Corey Cattle;

(b)    the date branded by Corey Cattle;

(c)    the ear tag or lot identification number, if any, assigned by Corey Cattle;

(d)    the pen location;

(e)    the details on quantity and ingredients of feed rations fed to the Cattle;

(f)    any veterinary services and supplies furnished by Corey Cattle;

(g)    the date or dates on which Cattle were removed from the custody of Corey Cattle;

(h)    Cattle pen locations;

(i)    a general health profile, including whether veterinary services were necessary and administered;

(j)    details relating to timing and cause of any deaths;

(k)    Corey Cattle shall deliver to Titan each month a written statement showing the number of Cattle in the possession or control of Corey Cattle during the preceding calendar month, the amount, costs, and type of feed and veterinary services and supplies given to Cattle during the preceding calendar month and since the day of delivery of the Cattle to Corey Cattle; and

(l)    The Feed Bills.

13.    Titan's Right To Inspect; Reports. Titan may, at any time during Corey Cattle's regular business hours, inspect the Cattle and examine, copy and audit Corey Cattle's records

3

DN 2862725.3

EXHIBIT 3                                           Page 3 of 7

*# 5*

relating to the Cattle and any other records kept by Corey Cattle pertaining to the performance of this Agreement.

14.   Sale, Removal And Release Of Cattle.   Titan shall have the right at any time to remove any or all of the Cattle from the custody of Corey Cattle, provided that Titan pays to Corey Cattle all Feed Bills accrued up to the date of removal.  Upon such removal, the feeding services provisions of this Agreement shall be deemed terminated in respect to those Cattle which are so removed.

15.   Termination Of Feeding Services.   Either Corey Cattle or Titan may terminate the feeding services provisions of this Agreement for any reason and to withdraw (or require the withdrawal of) the Cattle from the custody of Corey Cattle promptly thereafter.  Without prejudice to any other remedy it may have at law or in equity under this Agreement or otherwise, Titan may terminate this Agreement at any time if Corey Cattle should seek or suffer the appointment of a receiver to take possession of all or substantially all of Corey Cattle's property, make a general assignment for the benefit of creditors, or allow any judgment against Corey Cattle to remain unsatisfied or unbonded for more than thirty (30) days.  Upon any termination of this Agreement by either party, Corey Cattle shall continue to feed and care for the Cattle pursuant to the terms of this Agreement until all charges owned by Titan are paid in full and until the Cattle are removed from Corey Cattle's care by Titan or otherwise disposed of under applicable law.  Termination of this Agreement will not diminish or terminate the rights and obligations of the Parties in regard to acts or occurrences prior to the effective date of termination.  Any termination of the feeding services provisions of this Agreement shall not terminate Corey Cattle's Second Purchase obligation stated below.

C.   Second Purchase Agreement

16.   Second Purchase and Sale of Cattle.   Once each pen of Cattle reach a fat weight of approximately 1,400 to 1,550 pounds per head (the "Second Purchase Date") Corey Cattle agrees to purchase from Titan, and Titan agrees to sell to Corey Cattle the Cattle in that pen (the "Second Purchase").

17.   Second Purchase Price.   The purchase price for the Second Purchase of the Cattle is calculated as (the "Second Purchase Price"):

(a)   First, take the First Purchase Price allocable to each pen of Cattle shown in Section 1;

(b)   Second, add the full amount of the Feed Bill through the entire feeding period for each applicable pen of Cattle through the out date when shipped to a packer; and

(c)   Third, add to it a premium per pen for each applicable pen in accordance with the premium schedule stated below (the "Premium"):

| Pen | Premium |
|---|---|
| 9L | 10% of the First Purchase Price of this pen plus 10% of the total Feed Bill for this pen for |

4

DN 2862725.3

EXHIBIT 3                    Page 4 of 7

# 5

|  |  |
|---|---|
|  | the entire feeding period through the out date. |
| 7L | 10% of the First Purchase Price of this pen plus 10% of the total Feed Bill for this pen for the entire feeding period through the out date. |
| 6W | 10% of the First Purchase Price of this pen plus 10% of the total Feed Bill for this pen for the entire feeding period through the out date. |
| C | 10% of the First Purchase Price of this pen plus 10% of the total Feed Bill for this pen for the entire feeding period through the out date. |

The Second Purchase Price shall be payable when each applicable pen is at a fat weight.

18.   Titan's Lenders.   Titan represents and warrants to Corey Cattle that it has no lender requiring payment of the Second Purchase Price to discharge any lien.  Titan agrees to inform Corey Cattle promptly if any third party obtains a lien on the Cattle while owned by Titan, including the identity of and contact information for any such lender.

19.   Payment of Second Purchase Price.   The Second Purchase Price shall be promptly paid by Corey Cattle to Titan.  Payment of the Second Purchase Price shall be made by wire transfer to Titan in accordance with the following wire instructions:

> FOR FURTHER CREDIT TO FINAL BENEFICIARY BANK:
> Rabobank
> Santa Maria Operations Center
> Post Office Box 6010
> Santa Maria, CA  93456-6010
> Routing No. 122238420
> DDA# (Acct Number) 0867678599
>
> Beneficiary:  Titan Feeding LLC
> Suite 215, 123 North College Avenue
> Fort Collins, CO  80524

20.   Delivery; Title.   The delivery of the Cattle to Corey Cattle shall be at Corey Cattle's Feedyard located at 1220 N. 4000 W., Delta, Utah 84624 (hereafter, "Second Delivery").  The Second Delivery of each pen shall be on the Second Purchase Date and only after receipt of the Second Purchase Price for each pen of Cattle.  Title for each pen of Cattle will pass to Corey Cattle only after Titan receives the Second Purchase Price for that pen.

21.   Warranty of Title.   Titan warrants that it will have good title to all Cattle which are the subject of this Agreement at the time of the Second Purchase Date.

DN 2862725.3

EXHIBIT 3                    Page 5 of 7

22.   <u>Notices</u>.  All notices required or permitted to be given hereunder (hereafter, a "Notice"), unless otherwise specified, shall be in writing and shall be deemed properly given when delivered in person to the Party to be notified, or when sent by facsimile to the Party to be notified at its address set forth below, or such other address as the Party to be notified may have designated prior thereto by written Notice to the other:

If to Titan:

> Titan Feeding LLC
> Attn:  Hugh Skocdopole
> Operations Manager
> 123 N. College Avenue,
> Suite 215
> Fort Collins, CO 80524
> Telephone:  970-590-5783
> Fax:_____

If to Corey Cattle:

> Corey Cattle Co LLC
> Attn:  Mike Corey
> Manager
> 1220 N. 4000 W.
> Delta, UT  84624-7216
> Telephone:  _____
> Fax:  _____

23.   <u>Relationship of Parties</u>.  Titan and Corey Cattle agree that this is an Agreement dealing with the purchase and re-sale and feeding of certain animals, and that nothing in this Agreement shall constitute either Corey Cattle or Titan as agent, representative, partner, joint venture, livestock lender, livestock borrower or employee of the other Party in their respective operations.  Neither Corey Cattle or Titan shall have, nor shall either represent itself as having, any right, power or authority to create any agreement or obligations, either express or implied, on behalf of, in the name of, or binding upon the other party, or to pledge the other's credit or to extend credit in the other's name.  Further, nothing herein constitutes a credit or financing agreement between Corey Cattle and Titan or a commitment by Titan to finance any of Corey Cattle's operations.

24.   <u>Successors and Assigns</u>.  This Agreement and all the terms and provisions hereof shall be binding upon and shall inure to the benefit of the Parties and their respective legal representatives, successors and permitted assigns.  Any person acquiring or claiming an interest in a Party, in any manner whatsoever, shall be subject to and bound by all the terms, conditions and obligations of this Agreement to which its predecessor in interest was subject or bound, without regard to whether such person has executed this Agreement or a counterpart hereof or any rights to obligations relating to the Agreement greater than those set forth herein.

25.   <u>Modification</u>.  This Agreement and the Custom Feeding Agreement constitute the entire understanding of the Parties with respect to the subject matter hereof and supersedes any and all prior negotiations, understandings, and agreements in regard hereto.  No amendment,

DN 2862725.3

EXHIBIT 3                    Page 6 of 7

#5

modification or alteration of the terms hereof shall be binding unless that same is signed by both Parties.

26. <u>Assignment</u>. No assignment of this Agreement shall be binding or allowed unless approved in writing by the non-assigning Party.

27. <u>No Third Party Rights</u>. This Agreement and the covenants and agreements contained herein are solely for the benefit of the Parties hereto. No other person shall be entitled to enforce or make any claims of have any rights pursuant to the provisions of this Agreement.

28. <u>Governing Law</u>. This Agreement shall be governed in accordance with the laws of the State of Colorado, and any dispute under this Agreement shall be heard by courts of competent jurisdiction located in the State of Colorado.

TITAN FEEDING LLC

By: *Hugh Skocdopole*
     Hugh Skocdopole
Its: Operations Manager

COREY CATTLE COMPANY, LLC

By: *Michael Corey*
    Michael Corey (Mar 28, 2018)
    Mike Corey
Its: Manager

7

DN 2862725.3

EXHIBIT 3        Page 7 of 7

1/12/2018                           Scan_20180112.png                    Deal #6

## AGREEMENT TO PURCHASE, FEED AND RE-SELL CROSS WAGYU CATTLE
### (Number Six)

This Agreement To Purchase, Feed and Re-Sell Cross Wagyu Cattle ("Agreement") is made and entered into as of the 22nd day of December, 2017 by and between Titan Feeding LLC ("Titan") whose address is 123 N. College Avenue, Suite 215, Fort Collins, Colorado 80524 and Corey Cattle Company, LLC whose address is 1220 N. 4000 W., Delta, Utah 84624-7216 ("Corey Cattle") (sometimes, a "Party" and collectively, the "Parties").

### RECITALS

A.     Corey Cattle and Titan are in the business of the production and marketing of cattle.

B.     Corey Cattle and Titan desire to enter into cattle transactions in accordance with the terms and provisions of this Agreement.

### AGREEMENTS

Now, therefore, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

A.     The First Purchase Agreement

1.     First Purchase and Sale of Cattle.  On December 22, 2017 (the "First Purchase Date") Titan agrees to purchase from Corey Cattle, and Corey Cattle agrees to sell to Titan 755 head of good quality Wagyu Cross Cattle (the "First Purchase") described below (the "Cattle"):

| Lot | Pen | Breed | Type | # of Head | Estimated Wt. | First Purchase Price |
|-----|-----|-------|------|-----------|---------------|----------------------|
| TW44 | 6L | Beef Cross | Steers | 390 | 520 | $419,390.40 |
| TW43 | 2L | Beef Cross | Heifers | 365 | 500 | 383,250.00 |
|  | Total |  |  | 755 |  | $802,640.40 |

2.     First Purchase Price.  The purchase price for the First Purchase of the Cattle is $802,640.40 (the "First Purchase Price").

3.     Corey Cattle's Lenders.  Corey Cattle represents and warrants to Titan that the names and addresses of all of its lenders during the last five years which may have taken a security interest in Corey Cattle's livestock, inventory or farm products are as follows:

| Name | Address |
|------|---------|
| Western AgCredit | 51 E. 400 N. #2B, Cedar City, UT 84721 |

DN 2882861.2

https://mail.google.com/mail/u/0/#inbox/160eb201a0028dfa?projector=1

EXHIBIT 4                                    Page 1 of 7

4.      Payment of First Purchase Price. The First Purchase Price shall be promptly paid in good funds by Titan to Corey Cattle. Payment of the First Purchase Price shall be made by check jointly payable to Corey Cattle and Western AgCredit, and sent to Corey Cattle at the address set forth in Section 22 below.

5.      Delivery. The delivery of the Cattle to Titan shall be at Corey Cattle's feedyard located at 1220 N. 4000 W., Delta, Utah 84624 (the, "First Delivery"). The First Delivery shall be on the First Purchase Date.

6.      Warranty of Title. Corey Cattle warrants that it has good title to all Cattle subject to only a lien in favor of Western AgCredit, which lien shall be discharged by joint payee check for the First Purchase Price. Title to the Cattle shall pass to Titan upon the First Delivery.

B.      Feeding Services Agreement

7.      Branding. Promptly upon the First Delivery Corey Cattle shall, at Corey Cattle's expense, brand all Cattle with Titan's brand. Titan's brand is designated as follows:

 Left Rib Location

8.      Corey Cattle's Warranties. Corey Cattle represents and warrants that Corey Cattle is presently engaged in the business of feeding and caring for cattle for third party customers, and has and will continue to maintain such personnel, equipment, affiliations, and operating resources as are necessary to discharge Corey Cattle's feed and care responsibilities under this Agreement.

9.      Care of Cattle. Corey Cattle shall accept, care for, and provide feed, water, and minerals for the Cattle in accordance with good standards of care, responsibility, and good animal husbandry generally accepted in the industry. Corey Cattle shall take good and customary preventive measures to ward off all diseases, maladies, and injuries to the Cattle. Corey Cattle shall refrain from using any medication, feed, feed supplement, or method of care which may violate any state, local, or federal law or regulation, and shall otherwise comply with all federal and state laws and regulations which are applicable to the performance of Corey Cattle's obligations under this Agreement. Corey Cattle shall regularly and systematically inspect the Cattle for symptoms of sickness and disease and shall obtain such veterinary services and care for the Cattle as may be reasonable and necessary for the proper care of the Cattle. Corey Cattle shall, if requested by Titan from time to time, estimate the date on which particular Cattle will reach market weight. Corey Cattle shall notify Titan of the death of any of the Cattle, stating details sufficient to identify the animal and the date and cause of death.

10.     Payments By Titan For Feed And Care Services. Corey Cattle's compensation for the feed and care services to be provided herein shall be governed by Corey Cattle's Standard Custom Feeding Agreement concerning the Cattle of even date herewith (the "Custom Feeding Agreement"), which compensation shall be itemized in monthly feed bills which shall include accrued interest for feed and care charges (the "Feed Bills"); provided, however, that in the event of

2

DN 2882861.2

EXHIBIT 4                                          Page 2 of 7

a conflict between this Agreement and the Custom Feeding Agreement the terms of this Agreement shall control.  The Feed Bills shall be paid with 30 days of invoice and no interest shall accrue if paid within 30 days of invoice.

11.   _Risk of Loss; Insurance_.  Title to the Cattle shall remain solely in Titan until Titan's receipt of the Second Sales Price as described below.  Corey Cattle shall bear all risk of loss of death to such Cattle from any cause whatsoever, to include feed costs for deads.  Corey Cattle shall, at Corey Cattle's expense, arrange for normal peril insurance for the benefit of Titan and satisfactory to Titan in regard to death of Cattle while located with Corey Cattle.  All policies of such insurance shall name Titan as the insured.

12.   _Records on Cattle_.  In addition to any records required to be kept by law, Corey Cattle shall, at Corey Cattle's expense, keep and maintain the following complete and accurate records concerning as the Cattle:

   (a)   the date received by Corey Cattle;

   (b)   the date branded by Corey Cattle;

   (c)   the ear tag or lot identification number, if any, assigned by Corey Cattle;

   (d)   the pen location;

   (e)   the details on quantity and ingredients of feed rations fed to the Cattle;

   (f)   any veterinary services and supplies furnished by Corey Cattle;

   (g)   the date or dates on which Cattle were removed from the custody of Corey Cattle;

   (h)   Cattle pen locations;

   (i)   a general health profile, including whether veterinary services were necessary and administered;

   (j)   details relating to timing and cause of any deaths;

   (k)   Corey Cattle shall deliver to Titan each month a written statement showing the number of Cattle in the possession or control of Corey Cattle during the preceding calendar month, the amount, costs, and type of feed and veterinary services and supplies given to Cattle during the preceding calendar month and since the day of delivery of the Cattle to Corey Cattle; and

   (l)   The Feed Bills.

13.   _Titan's Right To Inspect; Reports_.  Titan may, at any time during Corey Cattle's regular business hours, inspect the Cattle and examine, copy and audit Corey Cattle's records

3

DN 2882861.2

EXHIBIT 4                              Page 3 of 7

relating to the Cattle and any other records kept by Corey Cattle pertaining to the performance of this Agreement.

14.    Sale, Removal And Release Of Cattle.  Titan shall have the right at any time to remove any or all of the Cattle from the custody of Corey Cattle, provided that Titan pays to Corey Cattle all Feed Bills accrued up to the date of removal.  Upon such removal, the feeding services provisions of this Agreement shall be deemed terminated in respect to those Cattle which are so removed.

15.    Termination Of Feeding Services.  Either Corey Cattle or Titan may terminate the feeding services provisions of this Agreement for any reason and to withdraw (or require the withdrawal of) the Cattle from the custody of Corey Cattle promptly thereafter.  Without prejudice to any other remedy it may have at law or in equity under this Agreement or otherwise, Titan may terminate this Agreement at any time if Corey Cattle should seek or suffer the appointment of a receiver to take possession of all or substantially all of Corey Cattle's property, make a general assignment for the benefit of creditors, or allow any judgment against Corey Cattle to remain unsatisfied or unbonded for more than thirty (30) days.  Upon any termination of this Agreement by either party, Corey Cattle shall continue to feed and care for the Cattle pursuant to the terms of this Agreement until all charges owned by Titan are paid in full and until the Cattle are removed from Corey Cattle's care by Titan or otherwise disposed of under applicable law.  Termination of this Agreement will not diminish or terminate the rights and obligations of the Parties in regard to acts or occurrences prior to the effective date of termination.  Any termination of the feeding services provisions of this Agreement shall not terminate Corey Cattle's Second Purchase obligation stated below.

C.    Second Purchase Agreement

16.    Second Purchase and Sale of Cattle.  Once each pen of Cattle reach a fat weight of approximately 1,400 to 1,550 pounds per head (the "Second Purchase Date") Corey Cattle agrees to purchase from Titan, and Titan agrees to sell to Corey Cattle the Cattle in that pen (the "Second Purchase").

17.    Second Purchase Price.  The purchase price for the Second Purchase of the Cattle is calculated as  (the "Second Purchase Price"):

(a)    First, take the First Purchase Price allocable to each pen of Cattle shown in Section 1;

(b)    Second, add the full amount of the Feed Bill through the entire feeding period for each applicable pen of Cattle through the out date when shipped to a packer; and

(c)    Third, add to it a premium per pen for each applicable pen in accordance with the premium schedule stated below (the "Premium"):

| Pen | Premium |
|-----|---------|
| 6L | 11% of the First Purchase Price of this pen plus 11% of the total Feed Bill for this pen for |

4

DN 2882861 2

EXHIBIT 4                     Page 4 of 7

the entire feeding period through the out date.

2L            11% of the First Purchase Price of this pen plus 11% of the total Feed Bill for this pen for the entire feeding period through the out date.

The Second Purchase Price shall be payable when each applicable pen is at a fat weight.

18.   **Titan's Lenders**. Titan represents and warrants to Corey Cattle that it has no lender requiring payment of the Second Purchase Price to discharge any lien. Titan agrees to inform Corey Cattle promptly if any third party obtains a lien on the Cattle while owned by Titan, including the identity of and contact information for any such lender.

19.   **Payment of Second Purchase Price**. The Second Purchase Price shall be promptly paid by Corey Cattle to Titan. Payment of the Second Purchase Price shall be made by wire transfer to Titan in accordance with the following wire instructions:

FOR FURTHER CREDIT TO FINAL BENEFICIARY BANK:
Rabobank
Santa Maria Operations Center
Post Office Box 6010
Santa Maria, CA 93456-6010
Routing No. 122238420
DDA# (Acct Number) 0867678599

Beneficiary: Titan Feeding LLC
Suite 215, 123 North College Avenue
Fort Collins, CO 80524

20.   **Delivery; Title**. The delivery of the Cattle to Corey Cattle shall be at Corey Cattle's Feedyard located at 1220 N. 4000 W., Delta, Utah 84624 (hereafter, "Second Delivery"). The Second Delivery of each pen shall be on the Second Purchase Date and only after receipt of the Second Purchase Price for each pen of Cattle. Title for each pen of Cattle will pass to Corey Cattle only after Titan receives the Second Purchase Price for that pen.

21.   **Warranty of Title**. Titan warrants that it will have good title to all Cattle which are the subject of this Agreement at the time of the Second Purchase Date.

22.   **Notices**. All notices required or permitted to be given hereunder (hereafter, a "Notice"), unless otherwise specified, shall be in writing and shall be deemed properly given when delivered in person to the Party to be notified, or when sent by facsimile to the Party to be notified at its address set forth below, or such other address as the Party to be notified may have designated prior thereto by written Notice to the other:

If to Titan:            Titan Feeding LLC

5

DN 2882861.2

EXHIBIT 4            Page 5 of 7

Scan_20180112 (6).png

#6

Attn:  Hugh Skocdopole
Operations Manager
123 N. College Avenue,
Suite 215
Fort Collins, CO 80524
Telephone:  970-590-5783
Fax:_____

If to Corey Cattle:

Corey Cattle Co LLC
Attn: Mike Corey
Manager
1220 N. 4000 W.
Delta, UT 84624-7216
Telephone: 435-406-908|
Fax: _____

      23.    <u>Relationship of Parties</u>.  Titan and Corey Cattle agree that this is an Agreement dealing with the purchase and re-sale and feeding of certain animals, and that nothing in this Agreement shall constitute either Corey Cattle or Titan as agent, representative, partner, joint venture, livestock lender, livestock borrower or employee of the other Party in their respective operations.  Neither Corey Cattle or Titan shall have, nor shall either represent itself as having, any right, power or authority to create any agreement or obligations, either express or implied, on behalf of, in the name of, or binding upon the other party, or to pledge the other's credit or to extend credit in the other's name.  Further, nothing herein constitutes a credit or financing agreement between Corey Cattle and Titan or a commitment by Titan to finance any of Corey Cattle's operations.

      24.    <u>Successors and Assigns</u>.  This Agreement and all the terms and provisions hereof shall be binding upon and shall inure to the benefit of the Parties and their respective legal representatives, successors and permitted assigns.  Any person acquiring or claiming an interest in a Party, in any manner whatsoever, shall be subject to and bound by all the terms, conditions and obligations of this Agreement to which its predecessor in interest was subject or bound, without regard to whether such person has executed this Agreement or a counterpart hereof or any rights to obligations relating to the Agreement greater than those set forth herein.

      25.    <u>Modification</u>.  This Agreement and the Custom Feeding Agreement constitute the entire understanding of the Parties with respect to the subject matter hereof and supersedes any and all prior negotiations, understandings, and agreements in regard hereto.  No amendment, modification or alteration of the terms hereof shall be binding unless that same is signed by both Parties.

      26.    <u>Assignment</u>.  No assignment of this Agreement shall be binding or allowed unless approved in writing by the non-assigning Party.

6

DN 2882861.2

https://mail.google.com/mail/u/0/#inbox/160eb201a0028dfa?projector=1

27.    No Third Party Rights.    This Agreement and the covenants and agreements contained herein are solely for the benefit of the Parties hereto. No other person shall be entitled to enforce or make any claims of have any rights pursuant to the provisions of this Agreement.

28.    Governing Law.  This Agreement shall be governed in accordance with the laws of the State of Colorado, and any dispute under this Agreement shall be heard by courts of competent jurisdiction located in the State of Colorado.

TITAN FEEDING LLC                                COREY CATTLE COMPANY, LLC

By:                                              By:
    Hugh Skochdopole                                 Mike Corey
Its:  Operations Manager                         Its:  Manager

7                                    DN 2882861.2

EXHIBIT 4                                    Page 7 of 7

Corey Cattle Company, LLC
3575 West 6500 North
Delta, UT 84624

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/10/2019 | 34 |

**Bill To**

Titan Livestock
123 N College Ave. # 350
Fort Collins, CO 80524

**Terms**

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Titan Feed Bill April 2019 | 112,545.12 | 112,545.12 |

Thank you for your Business!

| | **Total** | **$112,545.12** |
|---|---|---|

| Phone # | E-mail |
|---------|--------|
| (435) 253-2381 | grant@coreycattle.com |

*Hugh Schrödepeis*

EXHIBIT 5                              Page 1 of 1