**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02541-PAB-SKC

TITAN FEEDING, LLC,

      Plaintiff,

v.

COREY CATTLE COMPANY, LLC;
MICHAEL COREY a/k/a MIKE COREY;
AND DOES 1-10,

      Defendants.

---

**DEFENDANT MICHAEL COREY'S REPLY IN SUPPORT OF
MOTION TO DISMISS**

---

Defendant Michael Corey ("Mr. Corey") submits this reply in support of his Motion to Dismiss [Docket No. 13] ("MTD") and in opposition to Plaintiff Titan Feeding, LLC's ("Titan") Response to Corey's Motion to Dismiss [Docket No. 18] ("Response").

**INTRODUCTION**

Titan asserts against Mr. Corey several serious tort claims that, if proven, could damage his personal reputation as well as his professional reputation as manager of Corey Cattle Company, LLC ("CCC"). Titan should not be allowed to bring such claims in a forum with which Mr. Corey has had little or no contact. Titan admits that Mr. Corey was not a party to the contracts between CCC and Titan that contain a Colorado forum-selection clause. Titan does not dispute that Mr. Corey, on behalf of CCC, sent all invoices to Titan representatives residing in

Canada. Titan further does not dispute that Mr. Corey interacted with at least three Titan employees residing in Canada, and that Titan wired CCC invoiced amounts from Canada.

Instead, Titan relies on a business relationship from 2017 between one of its former employees and Mr. Corey to suggest that the torts it claims were committed in the summer of 2019 arise out of or relate to those years-old contacts. Such tenuous contacts do not confer personal jurisdiction over a defendant. Titan has not met its burden and the claims against Mr. Corey must be dismissed.

## ARGUMENT

### I. TITAN CANNOT MAKE A PRIMA FACIE SHOWING OF SUFFICIENT MINIMUM CONTACTS

Titan does not dispute that this Court lacks general jurisdiction over Mr. Corey. (MTD at 6.) The only question is whether Mr. Corey has sufficient "minimum contacts" with Colorado to subject him to specific jurisdiction. As Titan acknowledges (Response at 7), it may only satisfy the minimum contacts standard by showing that (1) "the defendant has 'purposefully directed' his activities at residents of the forum, and" (2) "the litigation results from the alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1116 (D. Colo. 1999). Titan has not proven either element.

#### A. Mr. Corey Did Not Purposefully Direct His Activities At Titan In Colorado

Titan has not proven that Mr. Corey purposefully directed his activities at Titan in Colorado. Titan's entire argument for purposeful availment relies on actions that Mr. Corey allegedly took from Utah (*see* Response at 9), where CCC ran its feed operation and where Titan's cattle were delivered to be fed. Titan alleges that Mr. Corey "wrote Titan's Fort Collins

address as the Feed Bills' delivery point." (Response at 9; *see also id.* at 10.) However, Titan does not dispute that the feed bills were never actually delivered to Colorado nor does it indicate that individuals in Colorado ever received the feed bills. To the contrary, Mr. Corey emailed the feed bills directly to Titan representatives in *Canada*. (MTD at 2; MTD Ex. A ¶ 9-10.) The purposeful availment requirement is not satisfied by such "attenuated contacts" with the forum state. *Burger King*, 471 U.S. at 475.

Titan asserts that because it is headquartered in Colorado, the "[b]runt" of Titan's injuries were felt here. (Response at 9; Response Ex. 1 ¶ 4.) Yet Titan does not provide any explanation or detail as to *how* it was injured in Colorado by Mr. Corey's alleged fraud. (Response at 9-10.) That Titan is headquartered in Colorado and allegedly bore its losses here (Response at 6) is insufficient, standing alone, to establish jurisdiction under Colorado's long-arm statute. *GCI 1985-1 Ltd. v. Murray Props. P'ship of Dallas*, 770 F. Supp. 585, 590 (D. Colo. 1991) (alleging injury in Colorado "only as a result of the fortuitous circumstance that [plaintiff] maintained its headquarters in Colorado" insufficient to satisfy long-arm statute); *see also Wenz v. Memery Crystal*, 55 F.3d 1503, 1508 (10th Cir. 1995) (That [plaintiff] may be economically impacted in Colorado, simply because he lives there, is insufficient to establish personal jurisdiction under . . . the Colorado long-arm statute."). To the extent Titan claims an economic impact in Colorado because its "business operations" occur here (Response at 2; Response Ex. 1 ¶ 4), "[m]ere economic impact in the forum is not sufficient to establish personal jurisdiction over" Mr. Corey. *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000).

Titan's attempt to analogize this case to *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.* is unconvincing. In *Dudnikov*, the plaintiffs identified a harm that was felt in Colorado: the canceling of their Colorado auction. 514 F.3d 1063, 1075 (10th Cir. 2008). Here, Titan does not identify any alleged injury it suffered in Colorado, nor can it, given that all of Mr. Corey's communications with Titan for the last two years have been with Titan representatives in Canada. (MTD at 3; MTD Ex. A ¶ 10.) Titan has not met its burden to prove that Mr. Corey purposefully directed his actions to Titan in Colorado.

### B. Titan's Tort Claims Did Not "Arise Out Of Or Relate To" Mr. Corey's Alleged Colorado-Based Activities

"Assuming *arguendo* that [Mr. Corey] has purposefully availed [himself] of the privilege of conducting activities in Colorado, Plaintiff must still show that there exists a nexus between those activities and Plaintiff's claims, i.e., that this lawsuit is based on injuries ***arising out of or relating to*** [Mr. Corey's] Colorado-based activities." *Tripoli Mgmt., LLC v. Waste Connections of Kan., Inc.*, No. 09-cv-01767, 2010 WL 845927, at *7 (D. Colo. Mar. 9, 2010) (emphasis added). As to this element, Titan cannot satisfy its burden. In claiming that "[t]his [c]ase [r]esults from [i]njuries that [a]rise [f]rom or [r]elate to Corey's Colorado [c]ontacts" (Response at 11), Titan alleges that Mr. Corey *addressed* fraudulent feed bills to Colorado (Response at 11) but does not dispute that the bills were not sent to the Colorado address. Titan also alleges that Mr. Corey "communicat[ed] with a Titan Colorado representative without divulging the theft and fraud" (Response at 11) but does not identify the putative Titan Colorado representative.

The only interaction Mr. Corey had with anyone in Colorado—which Mr. Corey did not even recall when filing his Motion to Dismiss—was with former Titan employee Nolan Stone in 2017, two years before the alleged "theft and fraud" occurred. (*See* Response at 3; **Exhibit A**,

- 4 -

Affidavit in Support of Defendant Michael Corey's Reply in Support of Motion to Dismiss ("Aff.") ¶¶ 3, 6-7.) Mr. Corey, on behalf of CCC, communicated with Mr. Stone regarding one of the contracts CCC and Titan executed in 2017. (*See* Compl. Ex. 1; Aff. ¶ 3.) But Mr. Corey was not a party to any contract with Titan and, accordingly, Titan does not assert a breach of contract claim against Mr. Corey. (MTD at 3; Response at 9 n.2.) Instead, Titan brings tort claims—civil theft, conversion, and fraud—against Mr. Corey, none of which are based on his communications with Mr. Stone in 2017 and all of which are based on alleged events that occurred in "summer 2019." (Compl. ¶ 3; Response at 4.) While Mr. Corey does not know when Mr. Stone left Titan, he has had no communication with Mr. Stone since 2017. (Aff. ¶¶ 4-5.) And, more importantly, Mr. Corey was not communicating with Mr. Stone in 2019 when the alleged tortious acts and Titan's alleged injuries occurred. (*Id.*) In short, Mr. Corey's alleged tortious acts in 2019 do not "arise out of or relate to" Mr. Corey's 2017 Colorado contacts. *See Tripoli*, 2010 WL 845927, at *7; *see also Shepherd v. U.S. Olympic Committee*, 94 F. Supp. 2d 1136, 1142 (D. Colo. 2000) (finding no personal jurisdiction where "alleged injuries do not 'arise out of' or 'relate to'" the "alleged contacts . . . with Colorado"). [1]

Mr. Corey did not communicate with *anyone* in Colorado during the period of time during which Titan alleges the fraud occurred. (Aff. ¶¶ 6-7.) All of his communications during

---

[1] Titan also alleges that "Jason Kraft, a Colorado resident and Titan member, dealt with Corey on behalf of Titan" without providing detail as to what those "dealings" were. (Response at 4; Response Ex. 1 ¶ 7(g).) For the same reasons described above, such an allegation is insufficient to establish that the tort claims asserted against Mr. Corey "arise out of" or "relate to" any alleged dealings with Mr. Kraft. Moreover, Mr. Corey does not recall any interactions with Mr. Kraft and does not have Mr. Kraft's contact information. (Aff. ¶ 6.) Upon a reasonable search of his emails and text messages, Mr. Corey was unable to find any record of communication with Mr. Kraft. (*Id.*)

that time were with Canadian residents. (*Id.* ¶ 7.) As such, Titan cannot meet its burden to prove that its claims arose out of or relate to Mr. Corey's Colorado contacts.

## II. EXERCISE OF PERSONAL JURISDICTION OVER MR. COREY WOULD OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

As Titan acknowledges (Response at 11-12), even if it alleges sufficient minimum contacts to support personal jurisdiction, the Due Process Clause further requires that the exercise of personal jurisdiction over the defendant must comport with "traditional notions of fair play and substantial justice." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004). This inquiry examines "whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *Id.* The "reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).

The United States Supreme Court has developed common-sense factors that should be considered in determining whether the exercise of personal jurisdiction over a non-resident defendant comports with "fair play and substantial justice."

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980)).

At least two of the above factors weigh in favor of a finding that the exercise of personal jurisdiction over Mr. Corey would be unreasonable. First, Colorado should have little interest in the claims brought against Mr. Corey. *All* alleged actions forming the basis of Titan's tort claims against Mr. Corey occurred at a cattle feed lot in Utah. Most, if not all, of CCC and Mr. Corey's potential witnesses reside in Utah. Moreover, all of Titan's employees with whom Mr. Corey was communicating at the time of and in regard to the alleged torts set forth in Titan's Complaint reside in Canada. (Aff. ¶ 7.) Thus, to the extent Titan has valid claims against Mr. Corey, they should be brought in Utah.

Second, a Utah court is "the most efficient place to litigate this dispute." (Response at 14.) Titan notes that "[k]ey to this inquiry are the location of the witnesses" and "where the wrong underlying the lawsuit occurred." (Response at 14.) *See TH Agriculture*, 488 F.3d at 1296. It cannot be disputed that Titan is alleging fraud and theft occurring in Utah at CCC's feed operation. And, as explained above, the key witnesses in this case reside in Utah or Canada. Titan pleads that if Mr. Corey were dismissed from this case "Titan would have to sue him in Utah." (Response at 14.) That is not a reason for this Court to confer jurisdiction where none exists.

### III. THE FORUM SELECTION CLAUSE HAS NO BEARING ON WHETHER THIS COURT HAS JURISDICTION OVER MR. COREY

Mr. Corey is not a party to the contracts between CCC and Titan and Titan does not bring a breach of contract claim against Mr. Corey. (*See* Response at 9 n.2; *see also* Compl.) Nevertheless, Titan still claims that the forum selection clause should be enforced against Mr. Corey *personally* for the *tort* claims it brings against him. (Response at 14-15.) But none of Titan's cases from this jurisdiction stand for the proposition that a court may confer personal

jurisdiction over non-parties to a forum selection clause. *See, e.g., Otimo Music, Inc. v. Royalty Exch., Inc.*, No. 18-cv-00006, 2018 WL 6697073, at *6-7 (D. Colo. Dec. 20, 2018) (noting that "because [defendant] is not a party to th[e] agreement," the court "must analyze his minimum contacts with the forum and whether the exercise of personal jurisdiction over him comports with traditional notions of fair play and substantial justice"); *Xantrex Tech. v. Advanced Energy Indus.*, No. 07-cv-02324, 2008 WL 2185882, at *8 (D. Colo. 2008) (refusing to allow third-party to enforce forum selection provision because of a lack of relationship between third party and "contractual relationship"). Rather, at least one court in this Circuit has made clear that merely signing contracts on behalf of another party is insufficient for personal jurisdiction. (*See* MTD at 7 (citing *Smalls v. Stermer*, No. 10-3025, 2011 WL 1234781, at *5 (D. Kan. Mar. 31, 2011).)

## CONCLUSION

This Court should not entertain Titan's attempt to conflate Mr. Corey's contacts with its former employee in Colorado in 2017 with torts allegedly committed in Utah in 2019 or to enforce CCC's consent to litigate contract claims in this jurisdiction against Mr. Corey individually. It should not allow Titan to assert serious tort claims against Mr. Corey in a forum that lacks jurisdiction over him. This Court should dismiss with prejudice the Complaint against Mr. Corey.

- 9 -

Respectfully submitted this 4th day of November, 2019.

    */s/ R. Kirk Mueller*
R. Kirk Mueller
Aditi Kulkarni-Knight
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, CO  80202
Telephone:  (303) 892-9400
Facsimile:   (303) 893-1379
Email: kirk.mueller@dgslaw.com
       aditi.kulkarni@dgslaw.com

*Attorneys for Defendant Michael Corey*

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2019, a true and correct copy of the foregoing was served upon the following in the manner indicated below:

| | |
|---|---|
| John O'Brien | (  ) First Class Mail |
| Scott C. Sandberg | (  ) Hand Delivery |
| Spencer Fane LLP | (  ) Facsimile |
| 1700 Lincoln Street, Suite 2000 | (  ) Overnight Delivery |
| Denver, CO 80203 | ( X ) CM/ECF E-Filing System |
| jobrien@spencerfane.com | (  ) E-Mail |
| ssandberg@spencerfane.com | |

*Attorneys for Titan Feeding, LLC*

              /s/ *Gretchen Pickett*
              Gretchen Pickett