## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLORADO

CIVIL ACTION NO. 19-CV-02541-PAB

TITAN FEEDING, LLC,

     Plaintiff,

v.

COREY CATTLE COMPANY, LLC; MICHAEL COREY A/K/A MIKE COREY; AND DOES 1-10,

     Defendants.

---

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THIRD AND FOURTH COUNTERCLAIMS

---

### INTRODUCTION

Titan's Motion to Dismiss specified how Corey Cattle failed to plead the statutory elements of its Third and Fourth Counterclaims. Corey Cattle's Response claims to meet those elements just by parroting them.

For its Third Counterclaim Corey Cattle still dwells on what *R Livestock* did with proceeds of cattle in which Titan confirmed a bailment. None of that backfills the control, criminal intent, and property missing from the claim. Corey Cattle defends its Fourth Counterclaim by pasting the buzzwords "security interest" "account debtor" and "collateral." But listing buzzwords is not enough—each buzzword has statutory elements that Corey Cattle cannot plead here. Conceding all this, Corey Cattle embeds a Rule 15 motion into its Response in violation of D.C.COLO.LCivR 7.1(d). The Court should dismiss the Third and Fourth Counterclaims.

**ARGUMENT**

I.  **COREY CATTLE CANNOT PLAUSIBLY PLEAD THE "CONTROL" OR "INTENT" ELEMENT OF CIVIL THEFT**

The Response anchors Corey Cattle's civil theft claim to a conversation that confirmed a bailment, not possession of property with criminal intent to deprive Corey Cattle of the property. Titan's Motion noted that civil theft requires unauthorized control over property, which R Livestock always had and Titan never had.  See C.R.S. § 18-4-405; Tisch v. Tisch, 439 P.3d 89, 103 (Colo. App. 2019); DTC Energy Group v. Hirschfeld, 2019 WL 4695743, *9 (D. Colo. 2019).

The Response concedes that Titan never actually or constructively possessed the cattle or proceeds or wrongfully withheld payment—R Livestock did all that.  Corey Cattle repeats its claim that Titan "instructed R Livestock not to remove Titan's name from the check"—*not* that Titan instructed R Livestock to give Titan the check.  (Doc. 14, ¶¶ 24-25).  Then Corey Cattle claims that "*R Livestock has declined to reissue the check*"—*not* that Titan instructed R Livestock not to do so.  Id. (emphasis added).  Corey Cattle then inserts the civil theft buzzwords without ever connecting that phone call with Titan obtaining the proceeds.

The Response does not dispute that "allegations fail to state a claim for civil theft against" a defendant when "there is no basis to conclude that [the defendant] ever obtained [the plaintiff's] property" so a "civil theft claim fails against a party that never possessed fraudulently obtained" property.  DTC, 2019 WL 4695743, *10 (citing Montoya v. Grease Monkey Holding, 883 P.2d 486, 490 (Colo. App. 1994)).  Neither the Counterclaim nor the Response wrestle possession or control away from R Livestock and to Titan.  Any plausible statement of this element remains absent from the Counterclaim.

2

Case 1:19-cv-02541-PAB-SKC   Document 31   Filed 11/25/19   USDC Colorado   Page 3 of 8

Civil theft requires a specific criminal intent and instructing the property's actual holder of a bailment does not fit the bill.   Corey Cattle does not dispute that it must plead "'the specific intent to permanently deprive the owner of the benefit of property . . . by theft, robbery, or burglary.'"   DTC, 2019 WL 4695743, *9.[1]   Viewed in its best light, the only intent inferable from the Counterclaim is an intent to assert a bailment claim and preserve an already-written check.

The Response does not backfill this void.   Instead, the Response repeats the "control" buzzword (still without plausibility) and Titan's status as a bailor rather than a secured party.   None of that amounts to civil theft's intent requirement.   Every day property interest issues like those alleged in the Counterclaim arise and are addressed with communications like those alleged in the Counterclaim.   Allowing litigants to shoehorn such issues and communications into civil theft claims would violate the "wide swath of conduct" pleading prohibition and jam the Court with unfounded litigation.   Khalik v. United Airlines, 671 F.3d 1188, 1191 (10th Cir. 2012).

Finally, Corey Cattle glosses over the fact that Titan claimed a bailment in cattle and those cattle are the only property of which Corey Cattle can claim theft.   But the "statute allows for the recovery of only the stolen property itself, not 'property or proceeds for which the stolen property may have been exchanged.'"   DTC, 2019 WL 4695743, *9 (quoting In re Marriage of Allen, 724 P.2d 651, 657 (Colo. 1986)).

---

[1] The DTC court also dismissed a civil theft claim for theft of property held by third party because the plaintiff failed to explain why the defendant had any obligation to prevent the third party from depriving the plaintiff of the property.   See id. at *10.   Here R Livestock issued the check jointly before ever contacting Titan and Corey Cattle fails to explain why or how Titan had any obligation to prevent this.   So that part of the DTC holding also applies and bars the claim.

3

DN 3874249.1

## II.   COREY CATTLE CANNOT PLAUSIBLY PLEAD THE "SECURED PARTY" "ACCOUNT DEBTOR" OR "COLLATERAL" ELEMENTS OF UCC § 9-607(c)

Rather than filling in the missing § 9-607(c) elements, Corey Cattle's Response elevates form high over substance and continues its rote reliance on buzzwords.  First, Titan demonstrated the failure to plead several elements of a § 9-607(c) claim including "secured party", "account debtor", and "collateral."  Corey Cattle does not even try to argue that it pleads the statutory requirements for "account debtor" or "collateral."  Corey Cattle does not and cannot call itself "a person obligated on an account, chattel paper, or general intangible" nor can Corey plead that the cattle proceeds were "property subject to a security interest or agricultural lien."  C.R.S. §§ 4-9-102(a)(3) & (a)(12).[2]  Instead, Corey Cattle fixates on the form used by Titan to confirm a bailment.

Second, Corey Cattle cannot use a form to plead the elements of a § 9-607(c) claim.  While not plead in its Counterclaim, Corey Cattle hinges its § 9-607(c) argument on the notion that the form used to state the bailment claim somehow satisfies the UCC's statutory pleading requirements.  Utah publishes a form for all types of commercial filings.[3]  And Utah law does not restrict those filings to secured parties under Utah Code Ann. § 70A-9a-102(73).  Rather, parties may use the filings for "compliance with other statutes and treaties for consignments, leases, other bailments, and other transactions."  Utah Code Ann. § 70A-9a-505.  But nothing in the UCC's express language or any rational construction of the UCC supports the notion that filing a financing

---

[2] See also Utah Code Ann. §§ 70A9a-102(3) & -102(12).

[3] See https://corporations.utah.gov/pdf/uccone.pdf.  A "court may properly consider facts subject to judicial notice . . . and matters of public record without converting a motion to dismiss into a motion for summary judgment."  Allen v. Clements, 930 F. Supp.2d 1252, 1258 (D. Colo. 2013).

DN 3874249.1

statement for a bailment somehow transforms the bailment into a "secured party" transaction involving an "account debtor" and "collateral" as those terms are defined in the UCC.

The prescribed form does, as Corey Cattle notes, use the words debtor and secured party. But, in the form on which Corey Cattle bases its claim, Titan disclaimed any notion of a "secured party" transaction involving an "account debtor" and "collateral" as those terms are defined in the UCC. Instead, the form states:

> This is a Bailee/Bailor filing. Notice is hereby given that Titan Feeding LLC is the owner of cattle and keeps cattle with the above referenced debtor for purpose of feed and care.

(Doc. 14-1 at 3, 6, 9). In other words, Corey Cattle can only plead that Titan was the cattle's owner, not a secured party with some lien interest in Titan's own property. And Corey Cattle can only plead that it was a bailor, not an account debtor that pledged the cattle as collateral.

The form attached to the Counterclaim provides Corey Cattle with no way to plead a § 9-607(c) claim. Like Corey Cattle's other arguments, the form just contains buzzwords with no substance. The buzzwords are available outside the secured party/account debtor/collateral context to which § 9-607(c) applies. See Utah Code Ann. § 70A-9a-505. As pled by Corey Cattle, any context to which § 9-607(c) applies has no place here. (Doc. 14-1 at 3, 6, 9).

Third, Corey Cattle has not otherwise shoehorned its claim into a "secured party" transaction. While the contention appears nowhere in its Counterclaim, Corey Cattle contends in its Response that Titan became a secured party in its own property through a security agreement. But neither the Response nor the Counterclaim alleges "an agreement that provides for a security

5

interest." C.R.S. § 4-9-102(a)(76).[4]  Instead, Corey Cattle claims (i) a feeding agreement that did

not mention any kind of security interest (Doc. 14, ¶¶ 10-14); and (ii) the same form stating a

bailment.  Nothing in the feeding arrangement or form amounts to a security agreement.

      Corey Cattle also argues that the form constitutes "attachment" creating a "security

interest" supporting the notion that Titan was a secured party in its own property.  That argument

confuses attachment with perfection.  Attachment, a requirement for a security interest, means the

"debtor has authenticated a security agreement that provides a description of the collateral." C.R.S.

§ 4-9-203(b)(1)(A)(emphasis added).[5]  But Corey Cattle—the supposed "debtor" in the

Response's narrative—never authenticated the form.  Once again Corey Cattle does not and cannot

plead a statutory requirement for its Fourth Counterclaim.[6]

## III.    THE COURT SHOULD NOT GRANT COREY CATTLE LEAVE TO AMEND

      Conceding the defects of its Counterclaim, Corey Cattle asks the Court for leave to amend.

"A motion shall not be included in a response or reply to the original motion. A motion shall be

filed as a separate document."  D.C.COLO.LCivR 7.1(d).  The Court should hold Corey Cattle to

this Rule.  Titan will likely oppose any amendment as futile.  See Omedelena v. Denver Options, 60

P.3d 717, 721 (Colo. App. 2002)("No liability attaches, however, where the act alleged to have

---

[4] See also Utah Code Ann. § 70A-9a-102(74).

[5] See also Utah Code Ann. § 70A-9a-203(2)(a)(i).

[6] Corey Cattle points to C.R.S. § 4-9-109(a)(1) which extends Article 9's scope to a "transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." Corey Cattle emphasizes the "regardless of form" language but omits any valid explanation of how any document alleged in the Counterclaim "creates a security interest."

caused the breach was undertaken in the exercise of an absolute right, that being conduct which the actor has a definite legal right to engage in without qualification.").[7] But unless Corey Cattle follows Rule 7.1(d), Titan has no way to assess the phantom amended counterclaim to which the Response alludes.

## CONCLUSION

Corey Cattle has any number of ways to recover whatever interest it may have in the cattle or proceeds, all of which start with going to the person actually holding the proceeds:  R Livestock. Concocting civil theft and UCC claims are not among the valid means that Corey Cattle may pursue. The Court should dismiss the Third and Fourth Counterclaims.

Dated:  November 25, 2019.

Respectfully submitted:
SPENCER FANE LLP

*/s/ Scott C. Sandberg*
John O'Brien, #15183
Scott C. Sandberg, #33566
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Phone: (303) 839-3800 / Fax: (303) 839-3838
Email:  jobrien@spencerfane.com; ssandberg@spencerfane.com
**Attorneys for Titan Feeding, LLC**

---

[7] See also Ervin v. Amoco Oil, 885 P.2d 246, 255 (Colo. App. 1994); Harris Group v. Robinson, 209 P.3d 1188, 1195-96 (Colo. App. 2009); Westfield Dev. v. Rifle Inv., 786 P.2d 1112, 1118 (Colo. 1990); Restatement (Second) of Torts § 773.

DN 3874249.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2019, a copy of the foregoing was filed and served

via ECF on the following:

Richard Kirk Mueller
Aditi  K. Kulkami-Knight
David Graham & Stubbs LLP
1550 17th Street
Suite 500
Denver, CO  80202
***Attorneys for the Defendants***

s/_____

DN 3874249.1