## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLORADO

CIVIL ACTION NO. 19-CV-02541-PAB

TITAN FEEDING, LLC,

      Plaintiff,

v.

COREY CATTLE COMPANY, LLC; MICHAEL COREY et al.,

      Defendants.

---

## PLAINTIFF'S DISCOVERY BRIEF

---

### BACKGROUND

      This is a theft and fraud case.  While the parties dispute many facts, they do not dispute that: (i) Titan and Corey Cattle entered four Contracts specifying 2,288 head of Cattle which Titan owned and Defendants possessed; (ii) those Contracts broke each head out by pen number[1]; (iii) until June 2019 Defendants had sole custody of the Cattle and the records of their disposition; (iv) Titan accounted for or recovered all but about 858 head; and (v) those 858 head (the **"Stolen Cattle"**) are gone.

      Titan claims theft of the Stolen Cattle and much of this case concerns their disposition, which only Defendants know.  So Titan served discovery focused on that disposition (Interrogatory Nos. 1-4; RFP Nos. 2-4).  Titan also claims that Defendants billed Titan for non-existent feed for the Stolen Cattle.  Titan claims fraud, a claim which requires scrutinizing Defendants' feed bills.

---

[1] An example of the Contracts' head delineation is attached as <u>Exhibit 1</u>.  The Contracts are attached to Titan's Complaint (Doc. 2).

Those bills and their creation are within Defendants' sole knowledge so Titan served discovery focused on those bills (Interrogatory Nos. 5-6).

Titan claims that when it confronted Michael Corey he confessed that he sold the Stolen Cattle and kept the proceeds because Corey Cattle was in dire financial condition. Defendants now deny this claim. Corey Cattle's financial records bear directly on that dispute and will show the manner in which Defendants accounted for the Stolen Cattle. So Titan served discovery seeking Defendants' financial records (RFP 3-4, 6, 11, 13, 14; Subpoena on Corey Cattle's lender, Rabo). Titan claims that Corey stated that other customers also had missing cattle. One such customer, Sugar Mountain, made demands on Titan, claiming that Corey had given Sugar Mountain's cattle to Titan. This gave Titan good reason to believe Defendants commingled cattle and their dealings with other customers were connected to dealings at issue here. So Titan served discovery focused on those dealings (Interrogatory No. 14; RFP Nos. 9-10). Finally, Titan requested identification of documents corresponding to Defendants' discovery responses (Interrogatory Nos. 17, 18).

Defendants objected to all this discovery and provided no meaningful information.[2] Defendants claim that disclosing the Stolen Cattle's disposition is unduly burdensome. Defendants refuse to disclose the manner in which they arrived at feed bills or whether Titan's cattle actually received feed billed by Defendants. Defendants point to documents they produced, which leads to another problem: Defendants' document production is nonsensical and indecipherable. They produced documents native and non-native formats without correlation and

---

[2] The disputed discovery responses are attached as <u>Exhibit 2</u>.

the documents provide no discernable information about the Stolen Cattle or feed bills.   An example is attached as Exhibit 3.

Defendants refuse to provide any information about their motive for fraud and theft—their financial condition—or similar issues with their other customers.  And Defendants refuse to clarify this morass by identifying documents corresponding to their responses.

### THE COURT SHOULD COMPEL RESPONSES TO TITAN'S DISCOVERY

This Court knows well why it should order Defendants to stop hiding the ball:  "The scope of discovery in federal court is broad . . . .  Rule 26 permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, while the proportional needs of the case serve as guardrails for further reasonably tailoring the scope of discovery."  Handy v. Fisher, 2019 6038065, *2 (D. Colo. 2019).

### The Stolen Cattle's Disposition (Interrogatory Nos. 1-4 and RFP Nos. 2-4)

The Stolen Cattle could not have vanished without explanation and "we don't know" or "it's too hard" are not valid explanations.  Defendants signed Contracts pinpointing Titan's Cattle in Defendants' possession, down to the head and pen number.  After that they had sole custody and control of the Cattle.  They no longer have the Stolen Cattle and only Defendants know where the Stolen Cattle went.  If Defendants sold the Stolen Cattle then they have records of those sales. The Stolen Cattle were worth millions of dollars and any buyer would insist on documentation. Defendants would need to report income from the sales for tax and financial reporting purposes. The Stolen Cattle all had brands registered with the state authorities to whom Defendants reported cattle shipments.  Any feed yard like the one operated by Defendants would keep careful closeout records.  Defendants took possession of other people's valuable property and Defendants knew

full well the need to account for that property.  So Defendants face no undue burden in specifying, down to the head, the disposition of the Stolen Cattle.  The "hundreds of head of cattle" of which Defendants complain are a central issue in this case.

Nor can Defendants hide behind their allusion to a "branding error."  They cannot even pinpoint the Stolen Cattle's disposition to that supposed error, claiming only that they "believe" that it relates to the Stolen Cattle.  The records referenced in Defendants' supplements are nonsensical and do not approach the documentation required for a multimillion dollar sale to a packer regulated by the Packers & Stockyards Act.  The "branding error" supplement continues hiding details, alluding to an unnamed "employee" and an unspecified "miscommunication."  At best Defendants' supplement is evasive; more likely, the supplement is as false as the Feed Bills Defendants sent for the Stolen Cattle after this supposed "branding error."

The Court should order Defendants to supplement their responses to Interrogatory Nos. 1-4 and RFP Nos. 2-4 to provide:

- An itemization, by head and Contract pen number of

  - Where each head of the Stolen Cattle are or who last took possession of each head;

  - Shipment dates for each of the 858 head of Cattle that were shipped;

  - The purchaser, price, and terms of sale for of each head of the Stolen Cattle that were sold;

- An accounting of what Defendants did with the proceeds of the Stolen Cattle's sale, including deposit records into the "operating account" referenced in Defendants' supplement and financial records disclosing or relating to the Stolen Cattle or their proceeds;

- Regarding Defendants' claim that some Cattle were repurchased from Titan, an itemization (per Interrogatory 4) of each head of Cattle that was not repurchased in accordance with the Contracts;

- The identity of the "employee" and the nature of the supposed "miscommunication"; and

- All records relating to the intake, feeding, care, and closeout of the Cattle.

4

**Manner of Calculating the Feed Bills (Interrogatory Nos. 5-6)**

Titan has claimed that Defendants billed Titan for Stolen Cattle after the Cattle were sold. Defendants deny that claim. The way Defendants calculated their Feed Bills, and the cattle—whether Stolen Cattle, other Titan Cattle, or others—that supposedly received the billed-for feed are vital to resolving these disputes. Defendants feed cattle for many customers and providing this information for one customer is neither overly broad nor unduly burdensome.

It should come as no surprise that Titan disputes Defendants' claim in response to interrogatory 5 that Titan approved feed bills. In any event, that claim sheds no light on how *Defendants* arrived at their feed bills or on and which cattle supposedly received the feed. Defendants' records are no help. The records are disjointed, indecipherable, and state no calculation method or cattle identification.[3]

The Court should order Defendants to supplement their responses to Interrogatory Nos. 5-6 to provide an itemization, by head and pen numbers from the Contracts, of the Cattle that received the feed for each bill.

**Financial Information (Subpoena on Rabo; RFP Nos. 3-4, 6, 11, 13, 14)**

This case involves fraud and theft and Titan should not and cannot accept Defendants' denials of that fraud and theft at face value. Defendants' evasive "we don't know" responses to simple questions about the Stolen Cattle and Feed Bills heighten the need for independent

---

[3] Both undersigned counsel have been involved in numerous cattle fraud and feed yard cases and affirm that the records produced by Defendants contain almost none of the detail or organization that any feed yard records would have.

verification of the parties' claims and denials. Their vague supplemental responses only compound the problem. That is where Defendants' financial information comes in.

Titan's theft and fraud claims carry intent elements disputed by Defendants. Titan has pled that Michael Corey confessed intent, stating that Defendants pocketed Stolen Cattle proceeds due to their dire financial condition. Defendants have denied that financial condition. Discovery of Defendants' financial information is crucial to resolve these issues and bears directly on intent.[4]

Defendants would have disclosed their cattle inventories (including the Stolen Cattle) and sales proceeds (including proceeds from selling the Stolen Cattle) in tax returns, accounting records, and disclosures to Defendants' lender, Rabo. Those documents will help answer questions about what happened to the Stolen Cattle proceeds.

In addition to requesting the information from Defendants, Titan subpoenaed records from Defendants' lender, Rabo, including financial information provided in seeking loans from Titan. Defendants are more likely to be candid in their statements to Rabo, which Defendants did not make for litigation purposes. So a comparison of financial information provided by Defendants in discovery and provided to Rabo for credit purposes is relevant to the Stolen Cattle's disposition and proceeds and to crucial issues of intent.[5]

---

[4] In conferral undersigned counsel confirmed that we will agree to a reasonable protective order limiting disclosure of financial information to use in this case.

[5] Defendants cite Cunningham v. Standard Fire Ins., 2008 WL 2902621 (D. Colo. 2008), an insurance case with no claims of theft, fraud, or financial motives. Defendants claim an accountant-client privilege but no such privilege applies. See Hercules, Inc. v. Martin Marietta, 143 F.R.D. 266, 267 (D. Utah 1992); In re Grand Jury Proceedings, 658 F.2d 782, 784 (10th Cir. 1981)("It is well settled that there is no confidential accountant-client privilege under federal law. Furthermore, in federal cases there is no state created accountant-client privilege.").

The Court should compel complete responses to RFP Nos. 3-4, 6, 11, 13, 14.  The Court should also deny Defendants' motion to quash the Subpoena on Rabo and order Rabo to comply with that Subpoena.

## Related Customer Complaints and Demands (Interrogatory No. 14 and RFP Nos. 9-10)

Before filing this case, Titan became aware of at least three other Corey Cattle customers from whom Defendants had also stolen cattle.  One of those customers, Sugar Mountain, made demands on Titan and claimed Defendants had given Titan some of Sugar Mountain's cattle. Those facts provide a good faith basis to claim that Defendants commingled cattle among their customers as part of their criminal enterprise.  Defendants have pled that claim and sought discovery of Defendants' communications with their customers relating to claims and issues similar to those in this case.  Those communications are directly relevant to contested issues and the Court should compel complete responses to Interrogatory No. 14 and RFP Nos. 9-10.

## Document Identification (Interrogatory Nos. 17-18)

Defendants cannot offer a litany of invalid objections and non-answers and then refuse to do something as easy as corresponding documents to discovery responses.  They have not produced documents in the ordinary course of any legitimate business.  And Fed. R. Civ. P. 34(b)(2)(E) does not excuse interrogatory response obligations.  The Court should compel complete responses to Interrogatory Nos. 17-18.

Dated:  December 16, 2019.

Respectfully submitted:
SPENCER FANE LLP

*/s/ Scott C. Sandberg*
John O'Brien, #15183
Scott C. Sandberg, #33566
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Phone: (303) 839-3800 / Fax: (303) 839-3838
Email:  jobrien@spencerfane.com; ssandberg@spencerfane.com
**Attorneys for Titan Feeding, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2019, a copy of the foregoing was filed and served via ECF on the following:

Richard Kirk Mueller
Aditi  K. Kulkami-Knight
David Graham & Stubbs LLP
1550 17th Street
Suite 500
Denver, CO  80202

*s/Scott C. Sandberg*
Scott C. Sandberg