IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLORADO

CIVIL ACTION NO. 19-CV-02541-PAB-SKC

TITAN FEEDING, LLC,

    Plaintiff,

v.

COREY CATTLE COMPANY, LLC; MICHAEL COREY et al.,

    Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

## INTRODUCTION

Titan's Motion confirms both Titan's diligent efforts to discover the full extent of Defendants' unlawful conduct, and Defendants' efforts to conceal that conduct and hinder and delay discovery. Titan seeks to file an Amended Complaint based on facts Defendants have known all along. Titan established both good cause and entitlement under Rule 15. In response Defendants point to delays they caused, fixate on a single email that could not have yielded the entire Amended Complaint, invoke a "normal course of business" they still refuse to explain, and pick factual disputes better suited for trial. None of this refutes Titan's entitlement to amend and the Court should grant Titan's Motion.

## REPLY TO DEFENDANTS' FACTUAL CLAIMS

1.     Defendants do not dispute that:

    a. They took Titan's cattle proceeds and did not repay them;

    b. Since this case concerns an intricate and concealed scheme, Titan's Complaint (¶ 11) disclosed the need to amend claims and add parties after Defendants complied with their discovery duties;

    c. After Titan served written discovery as soon as possible, Defendants requested long extensions and then, just one month before the December 27 amendment deadline, objected to almost all of Titan's discovery;

    d. Titan brought Defendants' discovery deficiencies to the Court's attention before the amendment deadline lapsed (Doc. 36);

    e. Defendants still refuse to specify the fate of Titan's cattle and cattle proceeds;

    f. After the Court ordered them to provide supplemental documents, Defendants did not provide the documents until late February—two months after the December 27 amendment deadline;

    g. Defendants did not provide documents concerning the cattle proceeds theft by Jon Corey and Dantes until late April; and

    h. The COVID-19 pandemic halted discovery from March through June.

2. Titan does not, as Defendants claim, base its Amended Complaint "almost entirely" on the May 15 Email disclosing that Jon Corey had taken and promised to return Titan's proceeds. We needed context for the May 15 Email, which did not mention Jon Corey by name. We needed an explanation for the cattle's disposition which has never come. We needed financial statements ordered by the Court to partially fill these gaps. We needed identification of Dantes and its role, to which the May 15 Email does even hint. All that information comprises the Amended Complaint's bases and Defendants did not provide that information until months after the December 27 amendment deadline.

3. Defendants are correct that the Court did not compel all requested discovery at the January 27 hearing and based that ruling on Defendants' claim that they washed Titan's cattle proceeds into some "normal course of business." At the hearing and in prior discovery Defendants

hid the fact that "normal course of business" meant Jon Corey taking the proceeds to pay Dantes. That revelation would not come until months later.

4. Defendants' Response omits the Court's Order at the January 27 hearing that

> Counsel for defendant shall do more due diligence in regard to the disposition of the cattle . . . produce applicable branding reports and the disposition of sale proceeds . . . supplement their response to request for production 6 by providing financial records from the years 2017-2019.

(Doc. 38). And Defendants omit that they took another month to comply with that Order.

5. Exhibit A to Defendants' Response is Titan's March 26 email requesting information about Jon Corey. Defendants did not supplement their discovery in response to that email until April 27 and they refused to provide most of the requested information.

## ARGUMENT

**I.   GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER TO PERMIT TITAN TO FILE THE AMENDED COMPLAINT**

Good cause boils down to "whether the movant *could have* amended its pleadings prior to the deadline." Greenway Nutrients v. Blackburn, 33 F. Supp.3d 1224, 1236 (D. Colo. 2014).[1] As detailed in its Motion, Titan acted diligently: we served discovery on the first day permitted, conferred with Defendants the day they served deficient responses, promptly involved the Court

---

[1] Defendants rely on Hoover v. Kelly, 2020 WL 1138471 (D. Colo. 2020) for their good cause argument, even though in Hoover "[]neither Party argued the threshold issue of good cause." Id. at *2. So the Court granted leave to refile the motion to amend. Likewise, in Lipari v. U.S. Bancorp, 2008 WL 2944909, *2 (D. Kan. 2008), also cited by Defendants, the court denied amendment because "Plaintiff has not made any attempt to demonstrate why he could not have met the . . . deadline through diligence." Defendants cite other inapposite cases. The court in Colorado Visionary Academy v. Medtronic, 194 F.R.D. 684, 688 (D. Colo. 2000) denied leave to amend because "the defendants admit that the delay in seeking amendment is the result of their failure." No such circumstance exists here. The moving party in Guidance Endodontics v. Dentsply Int'l, 2009 WL 3672505, *4 (D. N.M. 2009), knew most facts in its amended pleading "at the time of filing suit" and "filed the motion a mere 10 days before the trial was set to begin."

3

when Defendants refused to provide basic information, pressed Defendants to provide Court-ordered information, then pressed Defendants for supplements about Jon Corey and Dantes. But Defendants requested a long discovery response extension until November 25—one month from the amendment deadline. Conferral consumed most of December and the Court set a hearing on January 27—one month after the amendment deadline. At that hearing the Court ordered Defendants to produce financial records that helped piece together the facts needed for the Amended Complaint, but Defendants stalled another month in providing those documents. Those documents led Titan to request supplements that provided the final facts needed for the Amended Complaint. While they should have provided those supplements back in November, Defendants stalled for another month, until April 27, to provide the supplements.

Titan has not wasted a minute in pursuing information needed for the Amended Complaint. Defendants have concealed and stalled at every turn. Despite its diligence Titan could not have amended its pleadings before the deadline.

Against this Defendants dwell on the May 15 Email. Defendants spin the May 15 Email as the key to the entire Amended Complaint and imagine that Titan could have filed the Amended Complaint in October 2019 when Defendants provided the Email. The May 15 Email, written by Michael Corey, stated in relevant part

> We had a miscommunication with my brother and he took some money out thinking it was from some other money that had come in, he didn't know the wires that came in were from your cattle being sold. So they wouldn't let the wire go out. My brother is getting that figured out to get some money back in so we can send you the wire.

A copy of the May 15 Email is attached as <u>Exhibit 1</u>. The Email never mentions Jon Corey by name and does not mention Dantes or the amounts plundered. And according to the May 15 Email "my brother" would return the proceeds.

4

The May 15 Email aroused suspicion but Titan needed more information before suing Jon Corey and Dantes.  Most notably Titan needed to know what happened to its cattle and proceeds.  Titan requested that information at the first opportunity.  Defendants responded with objections and by claiming not to know what happened other than a nebulous "normal course of business."  The Court accepted Defendants' purported ignorance but ordered them to provide financial records to fill in gaps.  Those records—which Titan requested in October—prompted additional inquiries which then permitted the Amended Complaint.

Quickly scanning the Amended Complaint shows that it spans dealings and events and parties way beyond anything stated in the May 15 Email.  The Amended Complaint references records that Titan requested in October but Defendants did not provide until the following April.  Piecing together Defendants' scheme would have proven difficult even if Defendants had timely complied with their discovery obligations.  Their delays made it impossible.

Two flaws undermine Defendants' good cause argument.  First, they do not deny taking Titan's cattle proceeds and insist that the proceeds washed away into their "normal course of business," a phrase repeated in the Response.  Setting aside the fact that using someone else's money for your normal course of business is still stealing, Defendants refuse to explain the "normal course."  Titan spent months drilling that "normal course" down, discovered it was fraud and theft, then sought corresponding amendments to its Complaint.  Second, Defendants' arguments translate to a "you should have caught our wrongdoing sooner" position.  Defendants insist that reading between an email's lines would have yielded the improper financial dealings and diversions hidden by Defendants until months after the amendment deadline.

Titan has shown diligent efforts that could not have yielded the Amended Complaint by the December 27 deadline or even months after.  Defendants cannot refute those efforts or show that Titan could have filed the Amended Complaint by December 27 or even months after.  Good cause exists to grant Titan leave to file the Amended Complaint.

II.     **RULE 15(a) ENTITLES TITAN TO FILE THE AMENDED COMPLAINT**

   A.     **Titan Did Not Unduly Delay in Seeking Leave to Amend**

Rule 15(a)'s delay exception poses no obstacle to the Amended Complaint and Defendants have no valid basis to argue otherwise.   "Mere delay, unaccompanied by actual prejudice, bad faith, or futility, does not justify a denial of leave to amend." Arkansas-Platte & Gulf Partnership v. Dow Chemical, 886 F. Supp. 762, 765 (D. Colo. 1995)(citations omitted).

As detailed above, Titan wasted no time pursuing discovery, resolving discovery defects, chasing Court-ordered supplements, and piecing Defendants' scheme into the Amended Complaint.  Defendants point to no delays save one:  their fixation on the May 15 email.  Defendants insist that Rule 15(a) imposed a ready-fire-aim mandate that Titan file its Amended Complaint the instant it received the May 15 Email.  As detailed above, the May 15 Email lacked the detail needed for that.  Defendants gave Titan one puzzle piece in October then stalled until the following April to provide additional pieces needed for the Amended Complaint.  Against that backdrop Defendants present no valid reason to punish Titan for Defendants' delays and the Court should grant the Motion to Amend.

   B.     **Titan Does Not Seek Futile Amendments**

As Defendants concede, the "futility question is functionally equivalent to the question of whether a complaint may be dismissed for failure to state a claim."   Cowles v. Bonsai Design,

6

202 WL 30306067, *9 (D. Colo. 2020)(citation omitted).  That standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." Ridge at Red Hawk v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

### 1. The Amended Complaint Pleads Facts Establishing Personal Jurisdiction Over Jon Corey and Dantes

This Court may exercise specific personal jurisdiction over Jon Corey and Dantes if they "purposefully availed" themselves "of the privilege of conducting activities or consummating a transaction in" Colorado and "'the litigation results from alleged injuries that arise out of or relate to those activities.'"  Employers Mut. v. Bartile Roofs, 618 F.3d 1153, 1160 (10th Cir. 2010)(citation omitted).  For tort claims the Amended Complaint need only plead "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." Newsome v. Gallacher, 722 F.3d 1257, 1264–65 (10th Cir. 2013).  The Amended Complaint "need only make a *prima facie* showing of personal jurisdiction." Dudnikov v. Chalk & Vermilion Fine Arts, 514 F.3d 1063, 1070 (10th Cir. 2008). And any factual disputes "must be resolved in [Titan's] favor." Id. at 1070.  Under this standard, Titan need only "raise a reasonable inference that jurisdiction exists." CGC Holding v. Hutchens, 824 F. Supp.2d 1193, 1198 (D. Colo. 2011).  In sum, the "burden is light." AST Sports Science v. CLF Dist., 514 F.3d 1054, 1056 (10th Cir. 2008).

In extensive detail, the Amended Complaint alleges that both Jon Corey and Dantes expressly aimed a scheme of fraud and theft at Colorado knowing Titan would feel the injury here. The Amended Complaint alleges many such actions undertaken by Jon Corey and Dantes along with the other Defendants as part of a concerted scheme.  (See, e.g., Doc. 47-1, ¶¶ 16-20, 22, 25-30).  "In Colorado, personal jurisdiction may be exercised on a theory of alter ego." TransFirst v.

7

Brown, 323 F.R.D. 641, 653 (D. Colo. 2018).  And the Amended Complaint alleges conduct taken individually by Jon Corey (see, e.g., id. ¶¶ 16, 21, 24, 27, 28, 31.a, 33, 55-65, 70) and Dantes (see, e.g., id. ¶¶ 33-35, 42, 61-63, 79, 85.b).  These facts support a finding of personal jurisdiction under any standard and certainly the "light" standard applicable here.

Against these facts, Defendants make factual claims contradicted by the Amended Complaint.  They claim Jon Corey has little involvement in Corey Cattle's day-to-day operations.  But the Amended Complaint includes many facts showing Jon Corey's direct involvement.  (See, e.g., id., ¶¶ 56, 58).  Whether he touched cattle or not, Jon Corey touched plenty of money.  Most notably, Jon Corey reached right into Corey Cattle's bank account, took money belonging to Titan, and diverted the money to Dantes.  (Id., ¶¶ 59-69).  Defendants note Jon Corey's status as an attorney, a fact that only bolsters his knowledge that Titan would feel his fraud and theft in Colorado.  (See id., ¶¶ 21, 24).  Defendants claim Dantes has no connection with this dispute, ignoring the allegations that Dantes accepted and kept Titan's cattle proceeds as a cohort of Defendants' fraudulent scheme, knowing Titan would feel the impact of the theft and fraud in Colorado.  (See id., ¶¶ ¶¶ 33-35, 42, 61-63, 79, 85.b).

Defendants ask this Court to resolve trial factual issues at the pleading amendment stage, an invitation to error that this Court should decline.

### 2. The Amended Complaint Plausibly Pleads Alter Ego Liability as to Dantes

Defendants' ask this Court to turn a blind eye to the Amended Complaint's many facts showing that Dantes exists to facilitate the Corey Defendants' unlawful conduct.  Among other claims for relief, the Amended Complaint seeks to hold Dantes liable for Jon Corey's unlawful conduct.  Under "reverse veil piercing" Colorado law allows plaintiffs "to hold a corporation liable

8

for the obligations of an individual shareholder." In re Phillips, 139 P.3d 639, 644 (Colo. 2006). "'Indeed, it is particularly appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the preexisting liability of the controlling party.'" Id. (citation omitted).

The Amended Complaint alleges that Dantes is a thinly capitalized entity controlled by Jon Corey and lacks proper controls and records. (Doc. 47-1, ¶¶ 99-101) The Amended Complaint alleges that Dantes purports to have a contract with Corey Cattle but permits Corey Cattle to violate that contract. (Id., ¶ 102) And the Amended Complaint alleges that Jon Corey used Dantes as the conduit to take Titan's cattle proceeds and that Dantes received and continues holding those proceeds. (Id. ¶¶ 61-63). These allegations amply support Dantes' alter ego liability.

But Defendants' unfounded attempt to sever alter ego liability accomplishes nothing for amendment purposes. Even without alter ego liability the Amended Complaint alleges conversion, civil theft, fraudulent transfer, and civil conspiracy claims against Dantes.

### C.  Granting Leave to Amendment Will Not Unduly Prejudice Defendants

Defendants knew the Amended Complaint was coming from the moment Titan filed its original Complaint. And Defendants knew and hid the full scope of their scheme and the involvement of Jon Corey and Dantes long before Titan filed its Complaint. Knowing all that, Defendants claim that allowing the Amended Complaint will deprive them of discovery. But Defendants cannot articulate what discovery they would have served.

No party has taken a deposition as of this Reply's filing but the parties have scheduled the depositions of Defendants, Jon Corey, Dantes, Titan, and Titan's principals—all of which will occur knowing of the Amended Complaint. If the Amended Complaint necessitates added

9

discovery, then accommodations can be easily made. But the Amended Complaint concerns the same cattle, proceeds, and underlying dealings, so no one will need extensive additional discovery.

Allowing the Amended Complaint will not unduly prejudice Defendants. And denying leave to amend will lead Titan to file a separate case against Dantes and Jon Corey which will inevitably consolidate with this case.

### D.     The Amended Complaint Plausibly Pleads an Exemplary Damages Claim

In their last-gasp effort to avoid the Amended Complaint, Defendants challenge Titan's ability to prove exemplary damages "at trial." The Amended Complaint details knowing theft of assets which Titan had entrusted with Defendants, and Defendants' multifaceted efforts to hide that theft with fraud. Fraud, malice, and willful conduct appear throughout the Amended Complaint. The Court should decline Defendants' demand that it conduct a paper trial at the pleadings stage on the exemplary damages claim.

### CONCLUSION

Defendants and their newly added cohorts all acted together to take money they still refuse to return. To evade liability for this conduct, they double down and invoke their own improper acts. The Court should require Defendants and their cohorts to answer for their unlawful conduct by granting leave to file the Amended Complaint.

Dated: July 6, 2020.

>Respectfully submitted:
>SPENCER FANE LLP
>
>*/s/ Scott C. Sandberg*
>John O'Brien, #15183
>Scott C. Sandberg, #33566
>Spencer Fane LLP
>1700 Lincoln Street, Suite 2000
>Denver, Colorado 80203
>Phone: (303) 839-3800 / Fax: (303) 839-3838
>Email: jobrien@spencerfane.com; ssandberg@spencerfane.com
>**Attorneys for Titan Feeding, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2020, a copy of the foregoing was filed and served via ECF on the following:

Richard Kirk Mueller
Aditi K. Kulkami-Knight
David Graham & Stubbs LLP
1550 17th Street
Suite 500
Denver, CO 80202

>*s/Scott C. Sandberg*
>Scott C. Sandberg

11