IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02541-PAB-SKC

TITAN FEEDING, LLC,

      Plaintiff,

v.

COREY CATTLE COMPANY, LLC,
JON COREY, and
DANTES HOLDINGS, LLC,

      Defendants.

_____

**ORDER**
_____

      This matter is before the Court on Plaintiff's Second Motion to Dismiss Third and Fourth Counterclaims [Docket No. 119].  Defendant Corey Cattle Company, LLC ("Corey Cattle") responded, Docket No. 128, and plaintiff replied.  Docket No. 133.

## I.  BACKGROUND[1]

      This action arises, in part, due to plaintiff's alleged breach of contract with Corey Cattle and Corey Cattle's claim that plaintiff wrongfully controlled certain proceeds of an auction of Corey Cattle's cattle.  Docket No. 59 at 17, ¶¶ 3–4.  On November 4, 2018, plaintiff and Corey Cattle entered into agreements (the "Cattle Custom Feeding Agreements" or the "Agreements")[2] under which Corey Cattle was to receive from

_____

      [1] The following facts are taken from Corey Cattle's counterclaims, Docket No. 59, which follow Corey Cattle's answer and affirmative defenses, and are assumed to be true in considering plaintiff's motion to dismiss.

      [2] Corey Cattle did not attach the Agreements to the counterclaims.

plaintiff 3,385 head of steers and 2,478 head of heifers.  *Id.* at 18, ¶¶ 10–11.  The Agreements required Corey Cattle to "background feed" the cattle, which plaintiff would pay for by the pound of weight gain.  *Id.* at 19, ¶¶ 13–14.  Corey Cattle housed and fed the cattle and increased the cattle's weight as the Agreements required.  *Id.* at 19, ¶ 15.  According to Corey Cattle, plaintiff refused to pay for the weight gain and owes Corey Cattle $369,079.30 pursuant to the Agreements.  *Id.*, ¶¶ 16–17.

On September 17, 2019, 'R' Livestock Connection, LLC ("R Livestock") sold certain Corey Cattle-branded cattle at an auction.  *Id.*, ¶ 18.  Corey Cattle states that it "was informed" that R Livestock issued a check for $36,800, for the proceeds of the auction, made payable to both Corey Cattle and plaintiff.  *Id.*, ¶ 19.  R Livestock included plaintiff as a payee on the joint check after discovering certain of plaintiff's Uniform Commercial Code ("UCC") filings.  *Id.*, ¶ 20.  Plaintiff made three "bailee/bailor" filings in which plaintiff stated that it was the "owner of certain cattle," which cattle were identified on attachments to the filings.  *Id.*, ¶ 21.

When Corey Cattle learned that R Livestock had named plaintiff as a payee on the check, Corey Cattle contacted R Livestock to explain that the Corey Cattle-branded cattle sold at the auction were not the same cattle as those that plaintiff identified on the UCC filing, did not have plaintiff's branding, and were not owned by plaintiff.  *Id.* at 20, ¶ 22.  Corey Cattle believes that R Livestock relayed that information to plaintiff.  *Id.*, ¶ 23.  Corey Cattle alleges that plaintiff "instructed R Livestock not to remove [plaintiff's] name from the check."  *Id.*  R Livestock declined to re-issue the check due to plaintiff's "instructions" that R Livestock should not remove plaintiff's name, based on plaintiff's UCC filings.  *Id.*, ¶ 24.  As a result, Corey Cattle alleges that it has been deprived of the

proceeds of the sale of its cattle at auction.  *Id.*, ¶ 25.

Corey Cattle brings four counterclaims against plaintiff: (1) breach of contract, or, alternatively (2) unjust enrichment; (3) civil theft; (4) violation of Utah Code Ann. § 70A-9a-607.  *Id.* at 20–22, ¶¶ 26–43.[3]  Plaintiff moves to dismiss Corey Cattle's third and fourth counterclaims.  *See generally* Docket No. 119.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with his allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the court need not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the

---

[3] Utah Code Ann. § 70A-9a-607 is that state's codification of the Uniform Commercial Code on secured transactions.

court to infer more than the mere possibility of misconduct, the complaint has alleged –

but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190

("A plaintiff must nudge [his] claims across the line from conceivable to plausible in

order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a

complaint's allegations are "so general that they encompass a wide swath of conduct,

much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at

1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat

forgiving, "a complaint still must contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal

theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS

Plaintiff moves to dismiss Corey Cattle's civil theft and UCC counterclaims.  *See*

*generally* Docket No. 119.

### A.  Civil Theft Counterclaim

Under Colorado law, a person commits civil theft when he or she "'knowingly

obtains, retains, or exercises control over anything of value of another without

authorization or by threat or deception,' and acts intentionally or knowingly in ways that

deprive the other person of the property permanently."  *Van Rees v. Unleaded*

*Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016) (quoting Colo. Rev. Stat. § 18-4-401(1)).

A person must have "the specific intent to permanently deprive the owner of the benefit

of property."  *Id.*  In an action for civil theft, a person may maintain an action to recover

"property obtained by theft, robbery, or burglary."  Colo. Rev. Stat. § 18-4-405; *see Itin*

*v. Ungar*, 17 P.3d 129, 134 (Colo. 2000) (holding that the statute provides an owner of property with a private remedy that "requires proof of a specified criminal act").  The statute allows for the recovery of only the stolen property itself, not "property or proceeds for which the stolen property may have been exchanged."  *In re Marriage of Allen*, 724 P.2d 651, 657 (Colo. 1986); see also *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1179 (D. Colo. 2019).

Corey Cattle alleges that plaintiff knew that Corey Cattle, not plaintiff, owned the cattle sold at the R Livestock auction.  Docket No. 59 at 21, ¶ 36.  Corey Cattle states that the cattle had Corey Cattle's branding, not plaintiff's, and were not the same cattle that plaintiff listed on its UCC bailee/bailor filings.  *Id.*  By refusing to allow R Livestock to remove plaintiff's name from the check, Corey Cattle alleges that plaintiff "knowingly obtained and exercised unauthorized control" over the auction's proceeds, which belong to Corey Cattle.  *Id.* at 22, ¶ 37.  Corey Cattle alleges that plaintiff has acted with a "specific intent and purpose to permanently deprive" Corey Cattle of the auction's proceeds.  *Id.*, ¶ 38.

First, plaintiff argues that the civil theft counterclaim must be dismissed because Corey Cattle does not allege that plaintiff knowingly obtained control over the cattle.  Docket No. 119 at 3.  Plaintiff's argument misunderstands Corey Cattle's counterclaim.  Corey Cattle does not allege that plaintiff wrongfully obtained the cattle, but rather that plaintiff wrongfully obtained the proceeds of the R Livestock auction.  *See* Docket No. 59 at 22, ¶¶ 37–38 ("By refusing to allow R Livestock to remove [plaintiff's] name from the check to [Corey Cattle], [plaintiff] knowingly obtained and exercised unauthorized

control over the proceeds from the auction which rightfully belong to [Corey Cattle]."). [4]

Thus, plaintiff's argument that there is "no basis to conclude" that plaintiff "ever

obtained" the cattle, *see* Docket No. 119 at 3 (quoting *DTC Energy*, 420 F. Supp. 3d at

1180), misses the point.  Similarly, plaintiff's argument that it never "touched" the check,

*see id.*, is unconvincing because Corey Cattle alleges that R Livestock issued a joint

check that listed plaintiff as a payee.  Although the answer does not allege that the joint

check requires both payees to endorse it, assuming that requirement, Corey Cattle has

plausibly alleged that plaintiff has knowingly obtained control over the proceeds of the

auction because plaintiff controls the funds.  Moreover, Corey Cattle has alleged that

plaintiff's control was wrongful, as plaintiff knew that the cattle sold at the auction

belonged to Corey Cattle, not plaintiff.  *See* Docket No. 59 at 21, ¶ 36.  Accepting the

allegations as true, Corey Cattle has plausibly alleged that plaintiff had no entitlement to

the auction's proceeds and that plaintiff's control over the proceeds was wrongful.

Second, plaintiff argues that the answer does not allege that plaintiff had a

specific intent to permanently deprive Corey Cattle of the property.  Docket No. 119 at

4.  Plaintiff is mistaken.  Corey Cattle alleges that, because plaintiff knew that it had no

entitlement to the proceeds of the auction and because the cattle that R Livestock sold

were Corey Cattle's, not plaintiff's, plaintiff acted with specific intent to deprive Corey

Cattle of the auction's proceeds when plaintiff instructed R Livestock not to issue a new

check made out to Corey Cattle alone.  Docket No. 59 at 20, ¶¶ 22–23.  These

allegations are sufficient since Corey Cattle has alleged that plaintiff acted with

---

[4] The proceeds from the auction may be a "thing of value" for a civil theft claim, as the statute states, "a thing of value is that of 'another' if anyone other than the defendant has a possessory or proprietary interest therein."  Colo. Rev. Stat. § 18-4-401(1.5).  Here, Corey Cattle alleges that it has possessory interest in the proceeds.

knowledge that it was not entitled to the proceeds from the auction.

Third, plaintiff argues that a "pleading fails to state a civil theft claim when it claims a third party deprived the plaintiff of property and 'does not explain why [the defendant] had any obligation to prevent the deprivation.'"  Docket No. 119 at 4. Plaintiff purports to rely on *DTC Energy*, *see id.*, yet the language plaintiff quotes does not appear in that decision.  Moreover, *DTC Energy* is distinguishable.  In that case, the plaintiff alleged that it provided a housing allowance for its out-of-state employees, yet the defendant, who acted as a middleman between the employees and landlords, charged the employees far more than he paid the landlords.  420 F. Supp. 3d at 1180. The employees then sought reimbursement from plaintiff.  *Id.*  The Court held that the plaintiff failed to state a civil theft claim because there was no explanation why the defendant had any obligation to charge the plaintiff's employees the amount of rent equivalent to what the defendant presumably paid to the landlords.  *Id.*  Here, however, Corey Cattle alleges that plaintiff itself, not a middleman, has wrongfully exercised control over Corey Cattle's property, namely, proceeds from the auction, to which plaintiff is not entitled.

Finally, plaintiff argues that a civil theft claim permits recovery of the stolen property itself, but not the proceeds for which the stolen property may have been exchanged.  Docket No. 119 at 4 (quoting *DTC Energy*, 420 F. Supp. 3d at 1179). Again, plaintiff misreads the counterclaim as alleging that plaintiff wrongfully obtained the *cattle*, rather than the *check* or proceeds.  Corey Cattle alleges that it has the sole interest in the proceeds from the auction, given that its cattle were sold, not plaintiff's. Because Corey Cattle alleges that plaintiff "knowingly obtains, retains, or exercises

control over anything of value of another without authorization" in the proceeds of the auction, Colo. Rev. Stat. § 18-4-401(1), it has plausibly stated a civil theft claim against plaintiff, and the Court will deny plaintiff's motion to dismiss this counterclaim.

### B. UCC Counterclaim[5]

The UCC provides, in relevant part,

> (c) A secured party shall proceed in a commercially reasonable manner if the secured party:

>> (1) undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and

>> (2) is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor.

UCC § 9-607(c); Colo. Rev. Stat. 4-9-607(c); Utah Code Ann. § 70A-9a-607(3).

A "secured party" is

> (A) a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding;

> (B) a person that holds an agricultural lien;

> (C) a consignor;

> (D) a person to which accounts, chattel paper, payment intangibles, or

---

[5] The parties dispute which state's law applies. Corey Cattle cites Utah Code Ann. § 70A-9a-607, *see* Docket No. 59 at 22, ¶¶ 39–43. Plaintiff argues that Colorado law applies and asserts that Colorado's codification of the UCC is the same as Utah's. Docket No. 119 at 5 n.1. Corey Cattle asserts that both Colorado and Utah law apply because the laws of the state of attachment and the state of perfection apply. Docket No. 128 at 5 n.2. Given that both states' codification of the UCC is the same, the Court need not conduct a choice-of-law analysis. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 839 n.20 (1985) ("If the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them."); *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("According to conflicts of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question.").

promissory notes have been sold;

(E) a trustee, indenture trustee, agent, collateral agent, or other representative in whose favor a security interest or agricultural lien is created or provided for; or

(F) a person that holds a security interest. . . .

UCC § 9-102(a)(73); Colo. Rev. Stat. 4-9-102(a)(75); Utah Code Ann. § 70A-9a-102(73).  A "security interest" requires "attachment," which occurs when, as relevant here, the debtor "has authenticated a security agreement that provides a description of the collateral."  UCC § 9-203(b)(3)(A); Colo. Rev. Stat. 4-9-203(b)(3)(A); Utah Code Ann. § 70A-9a-203(2)(c)(i).

In Corey Cattle's UCC counterclaim, it alleges that plaintiff filed three UCC filings, which plaintiff described as "bailee/bailor filings," declaring that plaintiff was the owner of certain cattle.  Docket No. 59 at 19, ¶ 21.[6]  Corey Cattle alleges that plaintiff's filings created a security interest pursuant to the UCC.  *Id.* at 22, ¶ 40.  Because plaintiff is a secured party, Corey Cattle alleges that plaintiff must proceed in a "commercially reasonable manner" in its enforcement of a security interest and "may not exercise its right under the UCC to take collateral or proceeds it is otherwise not lawfully entitled to take or encumber."  *Id.*, ¶ 41.  Corey Cattle asserts that plaintiff acted in a commercially unreasonable manner by asserting its right to be a payee on the R Livestock check.  *Id.*, ¶ 42.

Plaintiff moves to dismiss this counterclaim, arguing that Corey Cattle failed to

---

[6] Corey Cattle attached these filings to the counterclaim.  Docket No. 59-1.  In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the challenged pleading itself, but also attached exhibits and documents incorporated into the pleading by reference.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

plausibly allege that it meets any of the definitions of "secured party" enumerated in Colo. Rev. Stat. 4-9-102(75).  Docket No. 119 at 6.  Plaintiff argues that the counterclaim does not allege that plaintiff authenticated a security interest, which means that any purported security interest has not attached and, consequently, any argument that plaintiff must comply with the UCC's secured party obligations fails.  *Id.*

Plaintiff is correct.  Corey Cattle's counterclaim does not explain why plaintiff is a secured party.  First, there is no allegation that the parties ever executed a security agreement and there is no mention of the other descriptors in UCC § 9-102(73); Colo. Rev. Stat. 4-9-102(75); Utah Code Ann. § 70A-9a-102(73), besides an assertion that plaintiff's "UCC filing created a security interest."  *See* Docket No. 59 at 22, ¶ 40.  That allegation is conclusory, and the Court does not accept it.  *See Cory*, 583 F.3d at 1244; *Moffet*, 291 F.3d at 1232.

In response, Corey Cattle asserts that plaintiff's filings meet the statutory definition of "security agreement" because the filings "memorializ[ed] the terms" of plaintiff's contract with Corey Cattle.  Docket No. 128 at 6.  That allegation, however, does not appear in Corey Cattle's answer and counterclaim, and Corey Cattle may not attempt to amend its answer through its response to plaintiff's motion to dismiss.  *Cf. Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).  Moreover, the filings do not support such an allegation.  *See generally* Docket No. 59-1.

Second, a security interest is not effective unless it is attached, which requires the debtor to have authenticated or signed the agreement.  *See, e.g.*, *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100, 1105 (Utah 2000) ("In order to attach, the debtor

must have signed a security agreement containing a description of the collateral."); *see also* UCC § 9-203(b)(3)(a); Colo. Rev. Stat. 4-9-203(b)(3)(A); Utah Code Ann. § 70A-9a-203(2)(c)(i).  Plaintiff's filings that Corey Cattle attached to its answer do not reflect a signature or authentication for Corey Cattle.  *See generally* Docket No. 59-1.  The only allegations regarding the creation of a security interest are conclusory.

Third, there is no allegation that Corey Cattle is an "account debtor," as the UCC requires.  *See* UCC § 9-607(c)(1); Colo. Rev. Stat. § 4-9-607(c)(1); Utah Code Ann. § 70A-9a-607(3)(a).  An "account debtor" is a "person obligated on an account, chattel paper, or general intangible."  UCC § 9-102(a)(3); Colo. Rev. Stat. § 4-9-102(a)(3); Utah Code Ann. § 70A-9a-102(3)(a).  Although the filings list Corey Cattle as the "debtor," Corey Cattle's answer contains no relevant allegation on this issue.  Corey Cattle, therefore, has failed to plausibly allege that plaintiff has any obligation under the UCC. Accordingly, the Court will dismiss this claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Second Motion to Dismiss Third and Fourth Counterclaims [Docket No. 119] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that defendant Corey Cattle Company, LLC's fourth counterclaim is **DISMISSED with prejudice**.[7]

---

[7] In its response, Corey Cattle asks for leave to amend its answer and counterclaims.  Docket No. 128 at 7.  Corey Cattle's request is improper.  Pursuant to the Local Rules, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  D.C.COLO.LCivR 7.1(d). The Local Rules also require a party seeking to file an amended pleading to attach the proposed amended pleading.  D.C.COLO.LCivR 15.1(b).  Corey Cattle did not do so. The Tenth Circuit recognizes "the importance of Fed. R. Civ. P. 7(b) and ha[s] held that

DATED September 13, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

normally a court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("[C]ases are not to be litigated piecemeal.  The court should not have to address repeated "improvements" to the complaint.  When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time."); *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm." (quotations and citation omitted; alteration in original); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) (affirming prejudicial dismissal and denial of request to amend made in response to motion to dismiss "without formal motion"); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave.").