IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02541-PAB-SKC

TITAN FEEDING, LLC,

    Plaintiff,

v.

COREY CATTLE COMPANY, LLC,
JON COREY, and
DANTES HOLDINGS, LLC,

    Defendants.
_____

# ORDER
_____

This matter is before the Court on Plaintiff's Second Motion for Partial Summary Judgment [Docket No. 120]. Defendant Corey Cattle Company, LLC ("Corey Cattle") responded, Docket No. 131,[1] and plaintiff replied. Docket No. 134.

## I. BACKGROUND[2]

Corey Cattle is a feed yard that takes in and feeds cattle owned by customers. Docket No. 120 at 2, ¶ 1. From 2017 to 2019, plaintiff Titan Feeding, LLC was a customer of Corey Cattle, which accepted plaintiff's cattle for care and feeding. *Id.*, ¶ 2.

---

[1] Corey Cattle's response does not comply with the Court's Practice Standards, which require that "[a]ny party opposing the motion for summary judgment shall . . . admit or deny the asserted material facts set forth by the movant. The admission or denial shall be made in separate paragraphs numbered to correspond to movant's paragraph numbering." Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv. Corey Cattle's response instead lists paragraphs 1–10 and then 0–29, rather than paragraphs 1–45, which would correspond to plaintiff's motion. The Court will follow plaintiff's numbering.

[2] The following facts are undisputed unless otherwise noted.

Corey Cattle, however, sold some of plaintiff's cattle and kept the proceeds. *Id.*, ¶ 3.[3]

The parties agreed for Corey Cattle to sell cattle to plaintiff and, when those cattle reached designated weight, Corey Cattle agreed to repurchase the cattle. *Id.*, ¶ 4. On July 19, 2017; August 23, 2017; December 7, 2017; and December 22, 2017, the parties entered into Contract 2, Contract 3, Contract 5, and Contract 6 (collectively, the "Contracts"), wherein plaintiff agreed to purchase 564, 479, 490, and 755 head of cattle, respectively. *Id.* at 2–3, ¶¶ 5–8. In each of the Contracts, Corey Cattle accepted possession and custody of the cattle that plaintiff owned in head counts stated in the Contracts. *Id.* at 3, ¶ 9. Upon delivery of the cattle to Corey Cattle, Corey Cattle had exclusive control over the cattle and held those cattle for plaintiff's benefit. *Id.*, ¶ 10.[4]

Without paying any of the proceeds to plaintiff, at some point Corey Cattle sold 20 of the 564 head of cattle purchased in Contract 2, 369 of the head of cattle purchased in Contract 3, 302 of the head in Contract 5, and 167 of the head in Contract 6. *Id.* at 3–4, ¶¶ 11, 14, 17, 20. Plaintiff did not authorize Corey Cattle to keep the proceeds without paying them to plaintiff. *Id.*; *see also id.* at 3–5, ¶¶ 12, 15, 18, 21.[5]

---

[3] Corey Cattle "denies that it intentionally sold [plaintiff's] cattle," Docket No. 131 at 2, ¶ 3, yet plaintiff does not state that the sale was intentional. Corey Cattle's denial, therefore, is not responsive. Corey Cattle also states that it denies referring to the cattle as the "858 head," *id.*, yet that is not mentioned in plaintiff's statement of facts and is irrelevant. The Court therefore deems this fact admitted.

[4] Corey Cattle admits this fact, yet "clarifies that [plaintiff] could also exercise control over the cattle" and removed 897 cattle from plaintiff's feedlot without affording plaintiff the opportunity to repurchase the cattle. Docket No. 131 at 2–3, ¶ 10.

[5] Corey Cattle admits that it sold these cattle, yet states that the sale of plaintiff's cattle was "inadvertent and was caused by a branding error" and was disclosed to plaintiff. Docket No. 131 at 3–4, ¶¶ 11, 14, 17, 20. Because Corey Cattle does not dispute that it sold these cattle and kept the proceeds, the Court deems these facts admitted. Corey Cattle also states that plaintiff "did not afford [Corey Cattle] an

Plaintiff states that the value of the 20 cattle from Contract 2 was not less than $49,241.14, that the value of the 369 cattle sold from Contract 3 was not less than $844,663.62, that the value of the 302 cattle sold from Contract 5 was $670,249.63, and that the value of the 167 cattle sold from Contract 6 was not less than $347,081.23.  *Id.* at 4–5, ¶¶ 13, 16, 19, 22.  The total of these figures for the 858 cattle that Corey Cattle sold (collectively, the "Sold Cattle")[6] is $1,911,235.62.  *Id.* at 5, ¶ 23.[7]  Plaintiff reached these figures as follows: (1) when Corey Cattle sold plaintiff's cattle, Corey Cattle would prepare and send to plaintiff "Wagyu Fats Shipped" reports, stating the number of head sold, weights, and lots from which the cattle came; (2) plaintiff prepared "Closeout" reports, which plaintiff would send to Corey Cattle, based on the Wagyu Fats Shipped

---

opportunity to repurchase some of its cattle[,] and the parties were unable to agree on a price for the repurchase."  *Id.* at 3–5, ¶¶ 12, 15, 18, 21.  This statement, however, is not responsive.

[6] Corey Cattle purports to dispute many of plaintiff's facts because plaintiff uses the term "Stolen Cattle," which Corey Cattle believes is false and derogatory.  The Court notes this disagreement, but does not find that the dispute in terms amounts to a genuine dispute of material fact, and the Court does not consider it further.

[7] Corey Cattle states that it disputes these figures.  Docket No. 131 at 3–5, ¶¶ 13, 16, 19, 22, 23.  For support, Corey Cattle cites former defendant Michael Corey's declaration, which states, "I disagree with [plaintiff's] calculations, based on my understanding of the market value and anticipated expert testimony."  Docket No. 131-13 at 2, ¶ 4.  Michael Corey then states that he believes that the value of the head sold from each contract is less than plaintiff states.  *Id.* at 2–3*,* ¶¶ 4.a–d.  This declaration, however, provides no explanation or support for these statements.  As a result, Corey Cattle's denial is unsupported.  The Tenth Circuit has made clear that "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings[; they] must be based on more than mere speculation, conjecture, or surmise."  *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).  The Court "do[es] not consider conclusory and self-serving affidavits."  *Id.* (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002)).  By contrast, plaintiff relies on a declaration by Hugh Skocdopole, who is plaintiff's Member and Operations Manager.  *See* Docket No. 120-9.  As discussed below, Mr. Skocdopole explains how plaintiff arrived at its value figures.  Thus, the Court deems these facts admitted.

reports for the cattle that were sold; (3) plaintiff matched the lot numbers in the Wagyu Fats Shipped reports to the Contracts using lot numbers and head numbers that Corey Cattle provided; (4) plaintiff made adjustments of $4,564.73 for incorrect purchase amounts; (5) because Corey Cattle wanted to increase the days "on feed" for plaintiff's cattle, the parties adjusted the premium by dividing the original premium by the original number of days on feed and then multiplying by the actual number of days on feed; and (6) plaintiff then factored in the feed costs. *Id.* at 5–7, ¶ 24.[8]  Corey Cattle agreed to the head counts and values. *Id.* at 7, ¶ 25.[9]

Between June 26 and June 30, 2019, plaintiff's representatives, namely, Mr. Skocdopole and Frank Rutledge, visited Corey Cattle's facility and met with its representatives. *Id.*, ¶ 26. Mr. Skocdopole discovered that certain of plaintiff's cattle were missing. *Id.*, ¶ 27. By June 30, 2019, plaintiff demanded that Corey Cattle return the Sold Cattle or pay plaintiff the value of the Sold Cattle under the Contracts. *Id.*, ¶ 28.[10]  At that time, plaintiff terminated the Contracts and recovered the cattle that

---

[8] Corey Cattle purports to dispute this fact, but only cites Michael Corey's declaration that he disagrees with the valuation. Docket No. 131 at 5, ¶ 24. Michael Corey does not state why he disagrees, and his statements are conclusory and unsupported. The Court therefore deems this fact admitted. *See Ellis*, 779 F.3d at 1201.

[9] Corey Cattle "admits that it communicated with [plaintiff] regarding closeout reports, but states that the closeout reports may not accurately reflect the cattle that had been inadvertently sold." Docket No. 131 at 5, ¶ 25. Corey Cattle cites to Michael Corey's declaration that "[t]he closeout reports may not accurately reflect the cattle had that had been inadvertently sold," Docket No. 131-3 at 3, ¶ 5, but Michael Corey does not explain why the reports are or may be inaccurate. The Court therefore deems this fact admitted. *See Ellis*, 779 F.3d at 1201.

[10] Corey Cattle denies that plaintiff demanded return of the cattle, Docket No. 131 at 6, ¶ 28, but does not dispute that plaintiff alternatively demanded to be paid the proceeds of the sale. Moreover, the interrogatory response that Corey Cattle cites in

Corey Cattle had not sold. *Id.*, ¶ 29. As of the filing of plaintiff's motion, Corey Cattle still has not returned any of the Sold Cattle or paid plaintiff any money for the value of the Sold Cattle. *Id.*, ¶ 30. Nor did Corey Cattle repurchase the cattle that it mistakenly sold, as Contracts 2, 3, 5, and 6 required Corey Cattle to do. *Id.* at 8–9, ¶¶ 32–33, 35–36, 38–39, 41–42.[11] Plaintiff did not sell the remaining cattle to Corey Cattle because Corey Cattle sold the Sold Cattle and kept the proceeds without plaintiff's authorization. *Id.* at 9, ¶ 45.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is

---

support of its denial that plaintiff ever demanded return of the cattle does not support the denial. *See* Docket No. 131-1 at 3–5. The Court therefore deems this fact admitted. Corey Cattle also states that plaintiff did not give it an opportunity to repurchase some of its cattle and that the parties were unable to agree on a price, *id.*; however, that statement is not responsive. Corey Cattle repeats this statement in response to numerous other facts, *see generally id.*, yet, except as where noted, the statement is not responsive.

[11] Corey Cattle admits that it did not repurchase the cattle, yet states that plaintiff did not give Corey Cattle the opportunity to do so and that the parties could not agree on a purchase price. Docket No. 131 at 6–8, ¶¶ 33, 36, 39, 42. Corey Cattle relies on an interrogatory response, which states that plaintiff "did not afford [Corey Cattle] an opportunity to repurchase the approximately 879 head of [c]attle as provided for in the Contracts." Docket No. 131-1 at 4.

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Id.* at 839–40.

If the party moving for summary judgment bears the ultimate burden of persuasion at trial, it must "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). This "shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery." *Id.*

### III.   ANALYSIS[12]

Plaintiff brings eleven claims against defendants. *See* Docket No. 55 at 22–32, ¶¶ 104–89. Plaintiff seeks summary judgment on its second and fourth through seventh claims against Corey Cattle. *See* Docket No. 120 at 1. These claims are for conversion and breach of the Contracts. Docket No. 55 at 23–24, 26–29, ¶¶ 110–15, 133–64.

#### A.  Conversion Claim

Plaintiff seeks summary judgment on its claim for conversion. Docket No. 120 at 10–11. Conversion under Colorado law is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Itin v.*

---

[12] Because plaintiff's claims are based on state law and the Court's jurisdiction is based on diversity, the Court applies Colorado law in resolving the motion. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state."). The parties also rely on Colorado law. *See* Docket Nos. 120, 131, 134.

*Ungar*, 17 P.3d 129, 135 n.10 (Colo. 2000) (quoting *Byron v. York Inv. Co.*, 296 P.2d 742, 745 (Colo. 1956)).  To establish conversion, plaintiff must show that (i) defendant exercised dominion or control over property; (ii) that property belonged to plaintiff; (iii) defendant's exercise of control was unauthorized; (iv) plaintiff demanded return of the property; and (v) defendant refused to return it.  *See DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1181 (D. Colo. 2019) (citing *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint.*, Inc., 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012)).  "[C]onversion *does not* require that the converter act with the specific intent to permanently deprive the owner of his or her property."  *Scott v. Scott*, 428 P.3d 626, 634 (Colo. App. 2018) (citing *Itin*, 17 P.3d at 135 n.10).  "An action for conversion does not rest on the defendant's knowledge or consciousness of the wrongdoing, nor the wrongful intent of the defendant."  *Id.* (quoting 18 Am. Jur. 2d Conversion § 3 (2017)).

      The undisputed facts establish that Corey Cattle exercised control over the Sold Cattle, which belonged to plaintiff and, although the Contracts authorized Corey Cattle's control over the Sold Cattle for some time, Corey Cattle acted without authorization when it sold the Sold Cattle.  The undisputed facts also establish that plaintiff demanded the return of the Sold Cattle – or the value of the Sold Cattle – but that Corey Cattle has refused.  That is sufficient for a conversion claim.

      Corey Cattle's arguments to the contrary are not persuasive.  First, Corey Cattle insists that there is a factual dispute over whether its control over the Sold Cattle was unauthorized, given that it took control of plaintiff's cattle with plaintiff's authorization pursuant to the Contracts.  Docket No. 131 at 8–9.  Corey Cattle relies on *Parker Excavating, Inc. v. Lafarge W., Inc.*, No. 14-cv-01534-LTB-MJW, 2016 WL 1756440, at

\*6 (D. Colo. May 3, 2016), *aff'd*, 863 F.3d 1213 (10th Cir. 2017). In *Parker*, the court noted that, although a defendant's initial possession of the plaintiff's property – in that case, "specialty signs" – was authorized, the plaintiff demanded the property's return "through this case" and, therefore, the court found triable issues of fact regarding the defendant's continued control over the property, which precluded summary judgment. *Id. Parker*, however, is distinguishable. Unlike that case, the undisputed facts here show that Corey Cattle exercised wrongful control in selling the cattle and retaining the proceeds without paying plaintiff. Moreover, in *Parker*, the court stated, "[i]t is unclear what happened to the[] signs." *Id.* at \*2. Here, it is clear what happened to the Sold Cattle – Corey Cattle sold them without authorization and has, also without authorization, retained the proceeds of the sale. Corey Cattle's reliance on *Parker* is therefore misplaced. Additionally, a person in lawful possession of property may commit conversion by refusing the owner's demand to return of the property. *See Scott*, 428 P.3d at 634 (citing *Davis v. Am. Nat'l Bank of Denver*, 367 P.2d 325, 326 (Colo. 1961)). Plaintiff was the legal owner of the Sold Cattle and demanded their return, which Corey Cattle did not do. The fact that Corey Cattle could not return the cattle, because it had already sold the cattle, does not provide a defense to Corey Cattle, as discussed below.

Second, Corey Cattle argues that it was "authorized to sell [plaintiff's] cattle and routinely did so after which it paid proceeds to [plaintiff]." Docket No. 131 at 9. This statement, however, is not sufficient to show a genuine dispute of material fact to prevent summary judgment on this claim. Corey Cattle provides no facts in support of this assertion in its response to plaintiff's statement of undisputed facts. Rather, in the

8

argument section, Corey Cattle cites four exhibits without any specific page reference to any one of them, which does not comply with the Court's Practice Standards. *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ii ("General references to pleadings, depositions, or documents are insufficient if the document is over one page in length."). Moreover, the fact that Corey Cattle may have been permitted to sell plaintiff's cattle at times does not show a factual dispute regarding its authorization to sell the Sold Cattle, which the undisputed facts make clear it was not so authorized.

Third, Corey Cattle argues that there is a factual dispute regarding its "refusal" to return plaintiff's cattle because, by the date plaintiff demanded the cattle's return, Corey Cattle had already sold the cattle and, therefore, could not have "refused" to return the cattle. Docket No. 131 at 9. Plaintiff contends that the notion that a defendant can sell someone's property and evade liability for conversion because the defendant no longer has the property lacks support. Plaintiff is largely correct. The broad definition of conversion as "*any* distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another," *Byron*, 296 P.2d at 745 (emphasis added), supports plaintiff's position that it should not be foreclosed from a conversion claim simply because Corey Cattle sold the cattle before plaintiff was able to demand the Sold Cattle's return. Moreover, there are numerous conversion cases in which a plaintiff seeks money damages for converted property like livestock or crops that were disposed of or harvested. *See, e.g.*, *Mason v. Farm Credit of S. Colo., ACA*, 419 P.3d 975, 983–84 (Colo. 2018) ("Farm Credit's conversion claim . . . alleged that Mason used or disposed of harvested crops, growing crops, livestock, unmanufactured

9

farm products, and farm machinery belonging to Farm Credit."); *Barrett v. Tallon*, 30 F.3d 1296, 1301 (10th Cir. 1994) (finding plausible conversion claim where plaintiffs pled that they "placed $1.5 million worth of cattle in the hands of the Bank, Fox, and Bradshaw, and the [d]efendants [subsequently] . . . converted said cattle . . . by selling the cattle at auction and converting the proceeds derived from [the sale] to their own personal use without the knowledge [or] consent . . . of the [p]laintiffs" (quotations omitted and alteration original)).  Because there is no genuine dispute of material fact that Corey Cattle engaged in a "distinct, unauthorized act of dominion or ownership" over property belonging to plaintiff, *see Byron*, 296 P.2d at 745, of which plaintiff demanded the return and Corey Cattle refused, *see DTC Energy*, 420 F. Supp. 3d at 1181, plaintiff is entitled to summary judgment on this claim.

### B.  Breach-of-Contract Claims

Plaintiff also seeks summary judgment for its breach-of-contract claims.  Docket No. 120 at 11–12.  In Colorado, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).  Plaintiff argues that the undisputed facts establish the existence of the Contracts, plaintiff's performance, Corey Cattle's non-performance by selling the Sold Cattle without telling plaintiff or paying plaintiff the proceeds, and damages to plaintiff in the loss of the Sold Cattle's value under the Contracts.  Docket No. 120 at 12.

Corey Cattle disputes that plaintiff complied with its obligations under the

Contracts.  Docket No. 131 at 10.  First, Corey Cattle argues that, in June 2019, plaintiff "collected and removed hundreds of cattle from [Corey Cattle's] feedlot," which deprived Corey Cattle of the opportunity to repurchase the cattle as provided in the contract.  *Id.*  The undisputed facts, however, establish that plaintiff removed the cattle that Corey Cattle had not sold and refused to sell the remaining cattle to Corey Cattle because (and after) plaintiff discovered that Corey Cattle had sold its cattle, which the contract did not permit.  *See* Docket No. 120 at 7, ¶¶ 28–29 ("No later than June 30, 2019, [plaintiff] demanded that Corey Cattle return the [Sold] Cattle or pay [plaintiff] the [Sold] Cattle's value under the Contracts." . . . "At that time [plaintiff] terminated the Contracts and recovered the cattle that Corey Cattle had not sold.").  Corey Cattle provides no facts – disputed or undisputed – that plaintiff's recovery of the remaining cattle could have breached the Contracts.  Corey Cattle also cites no provision of the Contracts that required plaintiff to give Corey Cattle an opportunity to repurchase cattle after Corey Cattle sold other of plaintiff's cattle, given that Corey Cattle's sale of the cattle excused plaintiff's performance.  *See, e.g.*, *Converse v. Zinke*, 635 P.2d 882, 887 (Colo. 1981) ("If one party has failed to perform the bargained for exchange, the other party may be relieved of a duty to continue its own performance.").

Second, Corey Cattle disputes plaintiff's contention that Corey Cattle did not perform under the Contracts.  Corey Cattle argues that, under the Contracts, it "'agree[d] to purchase from [plaintiff], and [plaintiff] agree[d] to sell' to [Corey Cattle], the cattle described in the Contracts only after the cattle reached a designated fat weight." Docket No. 131 at 10.  However, Corey Cattle argues, by the time plaintiff demanded that Corey Cattle repurchase the cattle, the cattle had already been sold.  Thus, Corey

11

Cattle insists, there is a factual dispute as to whether the cattle ever reached the necessary weight to trigger the repurchase obligation. *Id.* Corey Cattle's argument is not persuasive. As with the conversion claim, Corey Cattle attempts to use the timing of its conduct as a defense by insisting that, because it sold the cattle, it cannot be liable for any of plaintiff's claims against it. But Corey Cattle breached the Contracts when it sold the Sold Cattle to another and did not give plaintiff the proceeds, regardless of when that occurred, and Corey Cattle identifies no provision of the Contracts that permitted it to sell the cattle to another. Accordingly, plaintiff is entitled to summary judgment on its breach-of-contract claims.

### C.  Damages

Plaintiff argues that the Court should enter judgment against Corey Cattle for $1,911,235.62 plus 8% interest accruing since June 30, 2019 pursuant to Colo. Rev. Stat. § 5-12-102.[13] Docket No. 120 at 12–13. As plaintiff notes, "[t]he goal of a damage award is to 'place the parties in the same financial position they would have occupied had the contract terms been fulfilled.'" *Id.* at 12. *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1257 (Colo. App. 2008) (quoting *Colo. Nat'l Bank v. Friedman*, 846 P.2d 159, 174 (Colo. 1993)). "The prevailing party is therefore entitled to recover the amount of damages necessary to accomplish that result." *Id.* (citing *Kaiser v. Market Square Discount Liquors, Inc.*, 992 P.2d 636, 640 (Colo. App. 1999)). "The amount of damages

---

[13] "In cases that do not involve personal injury, section 5-12-102(1)(b) entitles parties to prejudgment interest 'at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld.' . . . In breach of contract cases, prejudgment interest accrues from the time of the breach, not from the entry of judgment." *Bd. of Cnty. Comm'rs of Adams Cnty. v. City & Cnty. of Denver*, 511 P.3d 692, 707 (Colo. App. 2022) (quoting Colo. Rev. Stat. § 5-12-102).

awarded for a breach of contract cannot be based on speculation or conjecture." *Id.* "However, damages need not be calculated with absolute precision, but must be determined with reasonable certainty." *Id.* at 1257–58 (citing *Tull v. Gundersons, Inc.*, 709 P.2d 940, 943 (Colo. 1985)); *see also Trans-W. Petroleum, Inc. v. United States Gypsum Co.*, 718 F. App'x 712, 714 (10th Cir. 2018) (unpublished) (applying "reasonable certainty" test on summary judgment); *U.S. ex rel. Sun Const. Co. v. Torix Gen. Contractors, LLC*, No. 07-cv-01355-LTB-MJW, 2009 WL 3416214, at *3 (D. Colo. Oct. 20, 2009) (same).

Corey Cattle disagrees with plaintiff's damages calculations. First, Corey Cattle argues that plaintiff's calculations are conclusory and are based almost entirely on Mr. Skocdopole's declaration. Docket No. 131 at 10–11. Corey Cattle, however, does not explain why it is inappropriate for plaintiff to rely on a declaration prepared by plaintiff's operations manager, who states that he has personal knowledge for the statements that he makes in the declaration and who, according to the undisputed facts, was personally involved in the dispute. *See* Docket No. 120-9 at 1. Corey Cattle does not argue that Mr. Skocdopole's declaration is a "sham" affidavit, for instance, such that it contradicts his prior testimony. *See, e.g.*, *Mascarenas v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-02799-KLM, 2015 WL 8303604, at *4 (D. Colo. Dec. 8, 2015) (discussing sham affidavits as those that conflict with prior sworn testimony).

Second, Corey Cattle argues that Mr. Skocdopole's declaration "provides no additional information" for how he reached his damages figures. Docket No. 131 at 11. Corey Cattle is correct that the particular paragraphs of Mr. Skocdopole's declaration stating the value of the various head of cattle from each contract provide little support

13

for the figures. *See, e.g.*, Docket No. 120-9 at 3, ¶ 17 ("In 2019, the value of the 20 head of cattle sold from the Contract #2 Cattle without [plaintiff's] authorization was not less than $49,241.14 based on Contract #2, records prepared by Michael Corey, and [plaintiff's] understanding of the value of its property."). However, Corey Cattle ignores that the undisputed facts detail how Corey Cattle reached its calculations. *See* Docket No. 120 at 5–7, ¶ 24. This process appears to have been taken from Mr. Skocdopole's declaration. *See* Docket No. 120-9 at 5–7, ¶ 31.

Third, Corey Cattle identifies its calculation of the value of plaintiff's cattle from its interrogatory responses. Docket No. 131 at 11 (citing Docket No. 131-1 at 4). That response states that Corey Cattle believes that it shipped the Sold Cattle, along with additional Corey Cattle-owned cattle, to a processor between January and April 2019 and that Corey Cattle received $1,854,671.14 for its sale of 1,187 cattle, which equals approximately $1,562.49 for each head of cattle. Docket No. 131-1 at 4. However, while Corey Cattle repeatedly cited portions of its interrogatory responses in its denials of other facts that plaintiff provided, as discussed previously, it did not cite this portion of its interrogatory responses in its denials of plaintiff's damages calculations. *See* Docket No. 131 at 3–5, ¶¶ 13, 16, 19, 22, 23. Instead, it cites only Michael Corey's conclusory declaration that he believed the values were less than plaintiff calculated, but not what he believed the values to be or why. *Id.*

The undisputed facts instead reflect a measure of damages that would "place the parties in the same financial position they would have occupied had the contract terms been fulfilled" with "reasonable certainty." *See Morris*, 201 P.3d at 1257–58 (quotation omitted). Accordingly, the Court will direct the Clerk to enter judgment for plaintiff in the

amount of $1,911,235.62 plus 8% interest accruing since June 30, 2019.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Second Motion for Partial Summary Judgment [Docket No. 120] is **GRANTED**. It is further

**ORDERED** that judgment shall enter in favor of plaintiff Titan Feeding, LLC and against defendant Corey Cattle, LLC on plaintiff's second, fourth, fifth, sixth, and seventh claims in the amount of $1,911,235.62 plus 8% interest accruing since June 30, 2019.

DATED September 13, 2022.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge