IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02541-PAB-SKC

TITAN FEEDING, LLC,

 Plaintiff,

v.

COREY CATTLE COMPANY, LLC,
JON COREY, and
DANTES HOLDINGS, LLC,

 Defendants.

---

# ORDER

---

 This matter is before the Court on Defendants' Motion to Exclude Testimony of Plaintiff's Expert Pursuant to Fed. R. Evid. 702 [Docket No. 143], filed on June 3, 2022 by defendants Dantes Holdings, LLC ("Dantes") and Jon Corey. On September 13, 2022, the Court dismissed all claims against Dantes without prejudice. Docket No. 155 at 34. Accordingly, the Court will refer to Mr. Corey as the sole movant.

 The motion seeks to exclude the testimony of Matthew D. Lausten, who plaintiff Titan Feeding, LLC ("Titan") has designated as an expert witness on the subject of whether alter ego relationships exist between defendants Corey Cattle Company, LLC ("Corey Cattle"), Jon Corey, and Dantes. Docket No. 143. Titan filed a response opposing the motion, Docket No. 145, and defendants filed a reply. Docket No. 152. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This case arises from a contract dispute between Titan and Corey Cattle. Docket No. 143 at 1. Corey Cattle was a Utah limited liability company ("LLC") that owned and operated a cattle-feeding operation in Delta, Utah. Docket No. 132 at 2, ¶ 3. Corey Cattle was dissolved in March 2021. *Id.* at 5, ¶ 26. Corey Cattle was owned 80% by Jon Corey and 20% by Michael Corey. *Id.* at 2, ¶ 5. Jon and Michael Corey are Utah residents. Docket No. 59 at 2, ¶¶ 7-8. Jon Corey is the sole owner of Dantes, another Utah LLC. Docket No. 132 at 5, ¶¶ 28, 30. Dantes was Corey Cattle's landlord and received lease payments from Corey Cattle. *Id.* at 5-6, ¶¶ 36-37. Titan is a Colorado LLC with its principal place of business in Fort Colins, Colorado. Docket No. 55 at 2, ¶ 5.

Corey Cattle and Titan entered into several contracts under which Corey Cattle agreed to house and feed Titan's cattle. Docket No. 132 at 2-3, ¶¶ 3, 14-15. Titan discovered that some of its cattle were missing from Corey Cattle's lot in June 2019. *Id.* at 4, ¶ 23. Titan alleges that Corey Cattle sold the cattle without authorization and did not give Titan the proceeds. Docket No. 55 at 1, ¶ 1.

Titan filed this action in the District Court of Larimer County, Colorado on August 7, 2019 against Corey Cattle and Michael Corey. Docket No. 1-1 at 2. Corey Cattle and Michael Corey removed this case to federal court on September 6, 2019. Docket No. 1 at 1. Titan's operative complaint brings eleven claims for relief: (1) civil theft under Colo. Rev. Stat. § 18- 4-405; (2) conversion; (3) fraud; (4-7) breach of contract; (8) fraudulent transfer in violation of Colorado's Uniform Fraudulent Transfers Act ("CUFTA"), Colo. Rev. Stat. § 38-8-101, et seq.; (9) civil conspiracy; (10) unjust

enrichment; and (11) exemplary damages. Docket No. 55 at 22-32, ¶¶ 104-89. Titan amended its complaint on August 17, 2020 and added Jon Corey and Dantes as defendants. *See generally id.*

Titan alleges that Corey Cattle "is not operated as a distinct corporate entity" but rather "operates for the purpose of concealing unlawful acts and diverting funds to insiders." *Id.* at 17, ¶ 84. Titan further alleges that Dantes is a shell corporation entirely controlled by Jon Corey that operates for the purpose of collecting money from Corey Cattle. *Id.* at 21, ¶¶ 94-97. Titan alleges that Jon Corey has the ability to move assets from Corey Cattle to Dantes as the common owner of both LLCs. *Id.*, ¶ 98. Titan claims that Jon Corey used his control over Corey Cattle and Dantes to steal the proceeds from the unauthorized sale of Titan's cattle. *Id.* at 22, ¶ 100. With the exception of its claim for fraudulent transfer, Titan relies on an alter ego theory of liability to bring its claims against Jon Corey for the actions of Corey Cattle and Dantes. *Id.* at 17-32, ¶¶ 83-189; Docket No. 127 at 12-15; Docket No. 137 at 2 n.1. Titan no longer asserts claims against Michael Corey, who received a bankruptcy discharge in 2021. *See* Docket Nos. 114 at 1, 127 at 2 n.2. The Court dismissed all claims against Dantes in September 2022. Docket No. 155 at 34.

Titan retained Matthew D. Lausten to conduct a financial analysis of defendants "using the framework of alter ego criteria found within forensic accounting literature." Docket No. 143 at 2 (quoting Docket No. 137-1 at 1). Mr. Lausten is a Certified Public Accountant, licensed in the state of Colorado, and a Certified Fraud Examiner. Docket No. 145-1 at 23.

Titan argues that Mr. Lausten's testimony will help the jury evaluate the evidence supporting Titan's alter ego theory because "most jurors will lack the knowledge or experience to independently understand" it.  Docket No. 145 at 4.  Titan explains that the jury will have to consider "financial statements, records from Defendants' accountant, loan documents, transaction records, and . . . descriptions of [defendants'] complex business arrangements," and argues that jurors "need help unraveling all these technical dealings and documents."  *Id.* at 2.  Mr. Corey seeks to exclude Mr. Lausten's testimony on the grounds that Mr. Lausten improperly references Colorado law and that he offers a legal opinion on whether an alter ego relationship exists.  Docket No. 143 at 4-6.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  The expert's proffered opinions must also be reliable.  *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the

4

principles and methods to the facts of the case"). Mr. Corey has not challenged Mr. Lausten's testimony on the basis of his qualifications or the reliability of his methods.

Assuming the expert is qualified and the opinions are reliable, the Court must ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 156 (1999); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

### III. ANALYSIS

Mr. Corey moves to exclude all of Mr. Lausten's testimony, arguing that Mr. Lausten incorrectly applies Colorado law instead of Utah law regarding indicia of an alter ego relationship and improperly states legal conclusions. Docket No. 143 at 6-7. Titan responds that any discrepancy between Utah and Colorado law on alter ego is merely a distinction without a difference and that Mr. Lausten does not offer legal opinions. Docket No. 145 at 4-8. The Court will address each argument in turn.

#### A.  **Exclusion Based on Improper Choice of Law**

Mr. Corey seeks to exclude Mr. Lausten's testimony because his opinions are based on alter ego factors that Colorado courts consider. Docket No. 143 at 4-5.

Because Mr. Corey argues that Utah law applies to whether Dante or Corey Cattle are his alter egos, Mr. Corey argues that Mr. Lausten's testimony should be excluded. *Id.*

### 1. Choice of Law Principles

In order to determine whether Mr. Lausten incorrectly relies on Colorado law, it is necessary for the Court to determine what law governs the alter ego issue. "In a case based on federal diversity jurisdiction, the law of the forum state governs." *Renfro v. Champion Petfoods U.S.A., Inc.*, 25 F.4th 1293, 1301 (10th Cir. 2022) (citing *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). Accordingly, the Court will apply Colorado choice of law principles to determine which state law governs the alter ego analysis. Although no Colorado Supreme Court or Colorado Court of Appeals decision has addressed the question of what state's law should be used to conduct an alter ego analysis regarding an out-of-state LLC, Colorado courts apply the "most significant relationship" test to determine choice of law questions in tort and contract actions.[1] *See AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007) (applying the most significant relationship test to a tort action); *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (applying the test to a contract action). The test requires a court to consider the following principles:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

---

[1] Titan relies on an alter ego theory of liability for both its tort and contract claims. *See* Docket No. 127 at 12-13.

*AE, Inc.*, 168 P.3d at 510 n.2 (citation omitted).  In order to apply these principles in a tort action, courts must take the following contacts into account:

>  (a) the place where the injury occurred,
>  (b) the place where the conduct causing the injury occurred,
>  (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>  (d) the place where the relationship, if any, between the parties is centered.

*Id.* at 510.

Titan claims that Mr. Corey is liable for Corey Cattle's unauthorized sale of Titan's cattle.  Docket No. 55 at 21, ¶ 92.  The cattle were kept on Corey Cattle's feed lot in Utah.  Docket No. 132 at 2, ¶ 3.  Titan's theory of alter ego liability hinges on its claim that Mr. Corey, a Utah resident, used his control over Corey Cattle and Dantes, two Utah LLCs, to steal the proceeds from the sale.  Docket No. 132 at 2, 5, ¶¶ 3, 28, 30; Docket No. 55 at 22, ¶ 100.  Titan is a Colorado LLC with its principal place of business in Fort Collins, Colorado.  Docket No. 55 at 2, ¶ 5.  Thus, factors (a), (b), and (d) favor applying Utah law and factor (c) is neutral.  On balance, the factors weigh in favor of applying Utah law to the alter ego inquiry as it applies to Titan's tort claims.

In order to determine what state has the most significant relationship to a contract action, courts must take the following contacts into account:

>  (a) the place of contracting,
>  (b) the place of negotiation of the contract,
>  (c) the place of performance,
>  (d) the location of the subject matter of the contract, and
>  (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Wood Bros. Homes,* 601 P.2d at 1372, n.4.  The contracts between Titan and Corey Cattle specified that Corey Cattle would feed Titan's cattle on its lot in Delta, Utah.  Docket No. 132 at 2-3, ¶¶ 3, 14-15.  However, the parties have not asserted any  facts

7

as to the place of contracting or the place of negotiating the contracts. *See* Docket Nos. 132, 137. As described above, the parties are a Utah resident, two Utah LLCs, and a Colorado LLC. Thus, factors (c) and (d) weigh in favor of applying Utah law and factors (a), (b), and (e) are neutral. On balance, the factors weigh in favor of applying Utah law to the alter ego inquiry as it applies to Titan's contract claims. Therefore, having considered the factors that Colorado courts use to determine what state has the most significant relationship to tort and contract claims, the Court finds that Utah law governs the alter ego analysis.[2]

### 2. Utah Law on Alter Ego

"Ordinarily a corporation is regarded as a legal entity, separate and apart from its stockholders" for the purpose of insulating the stockholders from the liabilities of the corporation. *Lodges at Bear Hollow Condominium Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 149-50 (Utah App. 2015). However, "[t]he alter-ego doctrine is an exception to this general rule: 'If a party can prove its alter ego theory, then that party may "pierce the corporate veil" and obtain a judgment against the individual shareholders even when the original cause of action arose from a dispute with

---

[2] Courts in this district have predicted that the Colorado Supreme Court would apply the Restatement (Second) of Conflicts of Laws with regard to alter ego claims. *See Jones v. Marquis Properties, LLC,* 212 F. Supp. 3d 1010, 1021 (D. Colo. 2016); *Francis v. Starwood Hotels & Resorts Worldwide, Inc.*, No.10-cv-02105-REB-KLM, 2011 WL 3351320, at *3 (D. Colo. Aug. 3, 2021). Under the Restatement, the state law under which the LLC was organized governs alter ego claims. *See Marquis Properties,* 212 F. Supp. 3d at 1021 (applying Utah law to claims concerning a Utah LLC); *Echostar Satellite,* 2009 WL 1011204, at *7 (applying Texas law to claims concerning Texas entities); *Woodward, Inc. v. ZHRO Solutions, LLC,* No. 18-cv-01468-PAB-STV, 2019 WL 1438076, at *7 (D. Colo, Mar. 31, 2019) (stating that Nevada law would govern alter ego analysis of a Nevada LLC). Accordingly, under the Restatement analysis, the Court would also find that Utah law governs the alter ego analysis.

the corporate entity.'"  *Id.* at 150 (quoting *Jones & Trevor Mktg., Inc. v. Lowry,* 284 P.3d 630, 635 (Utah 2012).  Alter ego liability is not restricted to actions concerning corporations and shareholders; Utah courts also "pierce the corporate veil" of LLCs to impose liability on their alter egos.  *See, e.g., Lodges at Bear Hollow*, 344 P.3d at 149-153 (conducting an alter ego inquiry to determine whether an LLC was the alter ego of a corporation).

In order to determine whether the corporate veil may be pierced under Utah law, courts apply a test announced in *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 2030 (Utah 1979); *Jones & Trevor* 284 P.3d at 635.  The *Norman* test allows a party to pierce the corporate veil if the following criteria are met:

> (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

*Jones & Trevor*, 284 P.3d at 635 (citing *Norman,* 596 P.2d at 1030).  In addition, the Utah Supreme Court has adopted eight factors "as useful considerations to aid courts in determining whether to pierce the corporate veil."  *Id.* at 636.  These factors are:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Id.*  The first seven factors are to be used to evaluate the first prong of the *Norman* test and the eighth is essentially identical to the second prong and is therefore superfluous. *Id.* at 637.  However, the *Jones & Trevor* court cautioned that these factors are "merely

9

helpful tools and not required elements" and that they are "only non-exclusive considerations."  *Id.* at 636-37.

### 3. Defendant's Arguments to Exclude Based on Choice of Law

Mr. Corey seeks to exclude Mr. Lausten's testimony in its entirety because he claims that Mr. Lausten's references to the factors that Colorado uses to determine whether to pierce the corporate veil would "introduce[ ] complication and confusion." Docket No. 143 at 5.  Mr. Lausten's report refers to what he calls "Colorado factors," which are factors taken from *In Re Phillips,* 139 P.3d 639, 644 (Colo. 2006), a case that counsel for Titan supplied to him.  Docket No. 145-1 at 3.  Mr. Lausten, however, does not focus his analysis on the Colorado factors.  Instead, he focuses his analysis on the factors enumerated by the Litigation Services Handbook, which Mr. Lausten says is a "commonly referred to in my profession for the general framework of certain types of analyses related to damages."  *Id.* at 3 n.2.  After considering the Litigation Services Handbook factors for a given topic, Mr. Lausten notes the Colorado factors that are relevant.

> The Colorado factors that Mr. Lausten references are:
>
> (1) [i]f the corporation operates as a distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a mere shell; (7) shareholders disregard legal formalities; and (8) corporate funds or assets are used for non-corporate purposes.

*Id.* at 3.  Titan argues that these factors "correspond directly" with the *Norman* test and that no conflict exists between Utah and Colorado law.  Docket No. 145 at 6.  Mr. Corey responds that "[t]he differences between the states' adopted factors are obvious and

many" and argues that Mr. Lausten's testimony should be excluded because it is based on Colorado law and is therefore unhelpful to the jury. Docket No. 152 at 5.

The Utah factors that Mr. Corey seeks to distinguish from the ones Mr. Lausten references are:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

Docket No. 152 at 4-5 (quoting *Jones & Trevor*, 284 P.3d at 636). Mr. Corey points out that each state, Colorado or Utah, considers some factors that the other does not, and that even when the descriptions of the factors each state uses are similar—such as "undercapitalization" and "thinly capitalized"—the phrases may be subject to diverging interpretations based on each state's caselaw. Docket No. 152 at 5. However, the Utah Supreme Court has held that the factors are "non-exclusive considerations" and that none of the enumerated factors is a required element for piercing the corporate veil. *Jones & Trevor*, 284 P.3d at 636-37. Mr. Corey fails to show how Mr. Lausten's inclusion of some factors and exclusion of some factors, which are non-exclusive, would confuse the jury. Thus, Mr. Lausten's opinions are not inadmissible on the basis that he references Colorado factors rather than Utah factors.

### B. Exclusion Based on Legal Conclusions

Mr. Corey argues that Mr. Lausten's opinions should be excluded because "they are impermissible legal conclusions and do not help the jury understand the evidence or determine a fact in issue." Docket No. 143 at 5. An expert witness may "testify in the

11

form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact" so long as the expert does not state legal conclusions drawn by applying the law to the facts. *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) (citations omitted). "The basis for the distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict, while testimony that articulates and applies the relevant law circumvents the jury's decision-making function by 'telling it how to decide the case.'" *Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co. (In re Centrix),* No. 09-cv-01542-PAB-CBS, 2015 U.S. Dist. LEXIS 71774, at *4 (D. Colo. June 3, 2015) (quoting *Specht v. Jensen,* 853 F.2d 805, 808 (10th Cir. 1988)).

Mr. Corey points out that, in *Centrix*, this Court found that an expert's conclusion that an individual was the defendant's alter ego was an inadmissible legal opinion. Docket No. 143 at 5-6. However, in *Centrix*, the Court only excluded the expert's "ultimate conclusion" that the person in question was the alter ego of Centrix. 2015 U.S. Dist. LEXIS 71774, at *4. The Court ruled that the expert was free to testify about "the significance of certain events as it relates to Centrix's failure to observe corporate formalities." *Id.* at *5. Here, Mr. Lausten does not state "ultimate conclusions" as part of his analysis of the alter ego factors.

Mr. Corey argues that Mr. Lausten's report offers a legal opinion on whether an alter ego relationship exists because "[h]e ultimately reaches the legal conclusion that 'indicia of the alter ego criteria exists among and between the Defendants.'" Docket No. 152 at 7-8 (quoting Docket No. 145-1 at 11). However, Mr. Lausten's opinion that, "from a forensic accounting perspective, indicia of the criteria exist," Docket No. 145-1 at 11,

12

is not equivalent to an opinion that the legal criteria to determine whether an alter ego exists have been satisfied. *See Centrix*, 2015 U.S. Dist. LEXIS 71774, at *4. Mr. Lausten's opinion is therefore not inadmissible on the grounds that he reaches an ultimate legal conclusion.

### C. Exclusion of Opinion About Wrongdoing by Defendants

Mr. Corey seeks to exclude Mr. Lausten's statement that "[t]he instant litigation is an indication of a wrong allegedly committed by the Defendants." Docket No. 143 at 6. This statement is found in a section of Mr. Lausten's report entitled "Indications of Wrong or Injustice," in which Mr. Lausten states that the factors that indicate wrong or injustice include:

- Did the parent's use of the subsidiary amount to actual fraud?
- Did the parent use the subsidiary to violate a law or statute or commit a tort?
- Did the parent strip the subsidiary of assets, rendering it judgment-proof?
- Did the parent use the subsidiary to engage in misrepresentation?
- Was the subsidiary formed for the express purpose of insulating liability that was likely to arise?

Docket No. 145-1 at 11. The testimony in this section is inadmissible for two reasons. First, Titan has not shown that this portion of the report is an application of Mr. Lausten's expertise and it has not shown that jurors lack the ability make a judgment without the help of an expert as to this topic. *See Thompson v. State Farm Fire and Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (upholding a district court's finding that expert testimony was inadmissible because it was "offered on an issue that a jury is capable of assessing for itself" and it would therefore "not even marginally assist" the jury in reaching a conclusion). Second, each enumerated factor requires legal analysis to determine whether it is present, as Mr. Lausten himself admits. Docket No. 145-1 at

13

11 ("Opining further on these factors, which call for legal conclusions, is beyond my purview."). Mr. Lausten concludes that "[t]he instant litigation is an indication of a wrong allegedly committed by the Defendants." *Id.* This statement constitutes a legal conclusion because it applies legal analysis to the facts of the case. Accordingly, the section of Mr. Lausten's report entitled "Indications of Wrong or Injustice" constitutes improper legal conclusions and will be excluded.

## IV. Conclusion

The Court will not exclude Mr. Lausten's testimony except for that section of his report entitled "Indications of Wrong or Injustice."

Wherefore, it is

**ORDERED** that Defendants' Motion to Exclude Testimony of Plaintiff's Expert Pursuant to Fed. R. Evid. 702 [Docket No. 143] is **GRANTED IN PART and DENIED IN PART**.

DATED March 31, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

14